393 A.2d 1256

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**James GOODMAN.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1977.

Decided Nov. 14, 1978.

---

Michael E. Riskin, Assistant District Attorney, Bethlehem, and John E. Gallagher, District Attorney, Easton, for Commonwealth, appellant.

Louis S. Minotti, Jr., Easton, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal by the Commonwealth from an order granting appellee's motion to dismiss under Pa.R.Crim.P. 1100.

On January 19, 1975, a complaint was filed against appellee charging him with armed robbery and various other offenses. Appellee was subsequently arrested and placed in Northampton County jail to await trial. On February 2, while awaiting disposition of the charges, he escaped. When he failed to appear for his originally scheduled trial on April 29, a bench warrant was issued for his arrest. On September 26 the Commonwealth learned that appellee had been picked up by Federal authorities in New York on a warrant for robbing a post office in Easton, and had waived extradition to Philadelphia. In November the Commonwealth called the United States Marshall's office in Philadelphia and learned that it could have appellee for trial on escape charges. On November 11 the Commonwealth filed a writ of habeas corpus with the Federal authorities, and on the following day appellee appeared in Northampton County and pleaded guilty to the escape charges. He also requested a preliminary hearing on the armed robbery charge. This request was granted as there was some question whether the original preliminary hearing had been properly conducted. The preliminary hearing was to be held on December 19 but was continued until December 22, upon the request of defense counsel. Following the preliminary hearing, appellee was returned to Philadelphia.

Sometime after the preliminary hearing, the Commonwealth scheduled the trial on the armed robbery charge for February 9, 1976. On February 2 the Commonwealth called Philadelphia for the purpose of obtaining appellee for trial, only to learn that he had been transferred by the federal authorities to Georgia. In January and February the Commonwealth sought two extensions under Pa.R.Crim.P. 1100(c). The first was granted on February 4, and extended the time for trial to February 27; the second was granted on February 26, and extended the time for trial to April 30. On March 12 the Commonwealth sent a request under the Interstate Agreement on Detainers Act, 19 P.S. § 1431, to get temporary custody of appellee. On March 24 it was notified by the federal authorities in Georgia that appellee had been transferred to New Jersey. On April 2 the Commonwealth called the appropriate authorities in New Jersey, and on the same day or soon thereafter, instituted additional proceedings under the Interstate Agreement on Detainers Act. Soon afterwards, the New Jersey authorities advised the Commonwealth that appellee would not be transferred to Pennsylvania until New Jersey charges had been disposed of.

Between May 7, 1976, and January 19, 1977, the Commonwealth and New Jersey had several discussions concerning the availability of appellee. While appellee was being held in New Jersey, the Commonwealth received approval for four additional extensions under Pa.R.Crim.P. 1100(c) of the time for trial. In particular, the Commonwealth requested extensions on April 7, June 6, September 13 and December 22, 1976. The last extension extended the time for trial to February 25, 1977. On January 27, 1977, the New Jersey authorities returned appellee to Northampton County. On February 10, 1977, appellee filed his motion to dismiss under Pa.R.Crim.P. 1100(f).

The lower court found that 754 days had elapsed between the date the Commonwealth filed the armed robbery charges and appellee's motion to dismiss under Pa.R.Crim.P. 1100(f). The court divided the total period into ten sub-periods and

attempted to determine whether each period should be included in calculating the 180 day limit imposed by Pa.R. Crim.P. 1100. The court found that the first fourteen days, January 19, 1975, the date of complaint, to February 2, 1975, the date of escape, were "chargeable" to the Commonwealth. It found that the second period, from February 2, 1975, to September 26, 1975, was excluded from computation pursuant to Pa.R.Crim.P. 1100(d) because appellee was "unavailable" for trial. The court found that the third period, from September 26, 1975, when the Commonwealth learned that appellee was in detention in Philadelphia, to November 12, 1975, when appellee was returned to Northampton County, was "chargeable" to the Commonwealth since it did not take action to secure appellee's presence for trial. The court dealt with the period from November 12, 1975, when appellee's counsel requested a preliminary hearing, to December 22, 1975, when the hearing was held, as a fourth period. It found that of the forty days involved, thirty were "chargeable" to the Commonwealth. The court characterized the request for a preliminary hearing by defense counsel as a request for "a continuance," and excluded the last ten days of the period under Pa.R.Crim.P. 1100(d)(2). The court found that the fifth period, from December 22, 1975, the date of the preliminary hearing, to February 4, 1976, the date the Commonwealth received its first extension, was "chargeable" to the Commonwealth because it did not take action to secure appellee's return, first from Philadelphia, and after February 2, from Georgia. With respect to the sixth period, February 4, 1976, to March 12, 1976, the date the Commonwealth filed a detainer request with federal authorities in Georgia, the court made two findings. First, it found that the first of the two extensions granted during the period, and, for that matter, all the extensions granted while appellee was incarcerated in another jurisdiction, were invalid. The court went on to say that "unless he truly is unavailable pursuant to Section (d), any period within the extension must be charged against the Commonwealth." Slip opinion at 29. Second, as in the case of the third period, the Commonwealth was found to have made no effort to

obtain custody; therefore, appellee was not "unavailable" for trial. The court found that the seventh period, from March 12, 1976, to March 24, 1976, was excluded because on March 12 the Commonwealth filed a detainer request to secure appellee's return to Pennsylvania. The court suggested, however, that the period from March 24, 1976, to April 2, 1976, should be "charged" to appellee because although the Commonwealth learned that the federal authorities in Georgia had transferred appellee to New Jersey on March 24, the Commonwealth did not contact New Jersey until April 2. The court held that the ninth period, from April 2, 1976, to January 27, 1977, was excluded because the Commonwealth had filed a detainer request with New Jersey and was constrained by New Jersey's refusal to return appellee. The court found that the final period, from appellee's return on January 27, 1977, until his motion to dismiss on February 10, 1977, should be "chargeable" to the Commonwealth. This last finding was not essential to the court's order as it found that prior to appellee's return on January 27, 1977, 182 days had already elapsed.

◼ On its appeal to this court, the Commonwealth makes a series of arguments based on the divisions of time specified by the lower court. To simplify matters, this opinion will also adopt these divisions. Preliminarily, however, we are obliged to comment on the lower court's method of computation. While it may be helpful to divide up the relevant time into periods, it is inappropriate to refer to a particular period as being "chargeable" to the Commonwealth. The Supreme Court has specifically condemned this practice, stating that "such terminology only serves to confuse the issue and thereby tends to cause confusion in the application of the Rule." *Commonwealth v. Shelton*, 469 Pa. 8, 13, 364 A.2d 694, 696 (1976). The Court has suggested, instead, that a court should first calculate when the period of 180 days ends, and that all delay beyond that date " '. . . must be either excluded from the computation [of the period, Pa.R.Crim.P. 1100(d)] or justified by an order granting an extension pursuant to the terms of the rule

[Pa.R.Crim.P. 1100(c)] if the Commonwealth is to prevail.' " *Id.*, 469 Pa. at 14, 364 A.2d at 697, (*quoting Commonwealth v. O'Shea*, 465 Pa. 491, 350 A.2d 872, 874 (1976)). Applying this method here, we find that 180 days from the date of complaint, January 19, 1975, was July 18, 1975. Instead the trial was set for February 25, 1977.

The Commonwealth's brief expresses no disagreement with the lower court as to the first two periods. Its first disagreement is as to the third period, from September 26, 1975, when the Commonwealth learned that appellee was in detention in Philadelphia, to November 12, 1975, when appellee was returned to Northampton County. The Commonwealth makes two separate but related arguments about this period. First, it suggests, without more, that since appellee had been unavailable until September 26, 1975, and Northampton County did not have criminal court sessions between September and November 1975, appellee's unavailable status should continue until the November session. Second, and perhaps more forcefully, the Commonwealth claims that it used "due diligence" in returning appellee to Northampton County for the November session, and that the time needed to do so was not unreasonable; the Commonwealth specifically contends that receipt of notice that a defendant is incarcerated in another jurisdiction does not end his status as being unavailable.

Neither of these arguments, while somewhat appealing on first glance, is sufficiently convincing to overturn the lower court's finding that this period should not be excluded from the mandatory period. This court has held that the Commonwealth "has the burden of proving the requisites of Section (d) in order to avail itself of an exclusion and must do so by a preponderance of the evidence," *Commonwealth v. Mitchell*, 246 Pa. 132, 372 A.2d 826 (1977), and neither argument satisfies that requirement.

The Commonwealth's first argument essentially claims that the Commonwealth should not be held responsible for the timing of court sessions in Northampton County. Yet, both the Supreme Court and this court have held that

"judicial delay," that is "delay in the commencement of trial caused by the judiciary," cannot be used as a basis for an "implied exclusion" under Pa.R.Crim.P. 1100(d). *Commonwealth v. Shelton, supra,* 469 Pa. at 13 n. 5, 19, 364 A.2d at 696 n. 5, 699. Thus in *Commonwealth v. Shelton, supra,* the Supreme Court said that if the Commonwealth wishes to argue that the judiciary had caused a particular delay, it would have to do so in the context of a petition seeking an extension under Pa.R.Crim.P. 1100(c). *Commonwealth v. Shelton, supra,* at 18, 364 A.2d at 699. And in *Commonwealth v. Dandy,* 252 Pa.Super. 387, 381 A.2d 972 (opinion by VAN der VOORT, J., 1977), where the Commonwealth argued that when both sides were ready to proceed on a particular trial date but the court did not reach the case until approximately one and a half months later, the delay should be excluded, this court held that "such circumstances may be caused to grant an extension of the period upon timely request by the Commonwealth under Rule 1100(c), but provide no basis for excluding periods of time under the provisions of Rule 1100(d)." Since there is no allegation in this case that the Commonwealth applied for an extension of the period in question, it is unnecessary to consider this argument further.

The Commonwealth's second argument also fails. The Commonwealth knew of appellee's whereabouts on September 26, 1975, but did not attempt to bring him back to the jurisdiction until November 12, the date of trial for the escape charges. Pa.R.Crim.P. 1100(d) states that "[i]n determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from: (1) the unavailability of the defendant or his attorney; . . . ." The Comment to the Rule suggests that "the defendant should be deemed unavailable for any period of time during which he could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; or during which he contested extradition, or a responding jurisdiction delayed or refused to grant extradition; . . . or during

which the defendant was absent under compulsory process requiring his appearance elsewhere in connection with other judicial proceedings." Without more, this Comment offers little guidance on the facts of this case. However, this court has attempted to clarify the concept of "unavailability." In *Commonwealth v. McCafferty*, 242 Pa.Super. 218, 363 A.2d 1239 (1976), the defendant was incarcerated in a federal penitentiary in another jurisdiction and the Commonwealth claimed that the defendant should be considered unavailable during the period of his incarceration. This court held that "the duty imposed on the Commonwealth by Rule 1100 to bring a defendant to trial within the prescribed period is not affected by the fact of his incarceration elsewhere . ." 242 Pa.Super. at 224, 363 A.2d at 1241. We indicated that had the Commonwealth attempted to extradite the defendant, using the procedures under the Interstate Agreement on Detainers, 19 P.S. § 1431 *et seq.,* and either the defendant or the responding jurisdiction had contested his return, the resulting delay would have been excluded. 242 Pa.Super. at 222, 363 A.2d at 1240. In *Commonwealth v. Kovacs*, 250 Pa.Super. 46, 378 A.2d 455 (1977), this court held that a ten month delay between the time the trial was originally scheduled and the defendant returned to the Commonwealth should not be excluded because the Commonwealth did not use "due diligence" where it knew of the defendant's presence in another jurisdiction on the date of the trial but did not file a detainer under the Interstate Act until eight months later. We stated that a defendant "will be considered unavailable only for the period of time during which his presence *could not be secured* despite due diligence by the Commonwealth." 250 Pa.Super. at 70, 378 A.2d at 457 (emphasis added). Because the Commonwealth failed to explain why it did not file its written request over the eight month period, it did not sustain its "burden of proving by a preponderance of the evidence that it exercised due diligence in seeking the return of appellee." 250 Pa.Super. at 71, 378 A.2d at 458. Here, the Commonwealth has made no showing that appellee *could not* have been secured at any point after it became aware of his whereabouts on September 26.

The record, in fact, indicates that the Commonwealth could have had appellee virtually at any time it wanted. Thus, only one day after the Commonwealth filed a writ of habeas corpus, appellee was returned to Northampton County. Record at 164a. Apparently, the only reason the Commonwealth did not file a writ of habeas corpus before November 11 was that it knew that appellee could not be brought to trial before November 12 because of the court schedule. Yet, as stated above, "judicial delay" cannot be a basis for exclusion under Rule 1100(d).

The next disagreement between the Commonwealth and the lower court centers around the fifth period, from December 22, 1975, the date of the preliminary hearing, to February 4, 1976, the date the Commonwealth received its first extension under Pa.R.Crim.P. 1100(c). The Commonwealth rejects the lower court's finding that this period is "chargeable" to it, arguing instead that appellee's request for a preliminary hearing was, in fact, a request for a continuance and that the delay attributable to this continuance extended to February 4, since the court did not have a January criminal session and could not try the case until February 9, 1976.

It is necessary to point out that both the Commonwealth and the lower court have misinterpreted the language of Pa.R.Crim.P. 1100(d)(2). It reads: "In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from: . . . (2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded; . . ." In *Commonwealth v. Delauter,* 257 Pa.Super. 510, 390 A.2d 1354 (1978), the Commonwealth had filed a petition to extend on the 185th day, successfully arguing below that the application was timely since some of the 180 days should have been excluded because of delay caused by the defendant's pre-trial motion to remand for a preliminary hearing. This court reversed the lower court's grant of the petition

and dismissed the charges. We noted that the lower court had treated the remand for a preliminary hearing as a request for a continuance and expressly disapproved of this practice, stating that "If this is true, then every pre-trial application that causes delay in trial is, in effect, an application for continuance." Slip opinion at 2. There is no basis for distinguishing the defendant's motion to remand for preliminary hearing in *Delauter* and appellee's motion for a new preliminary hearing here. As a consequence, the lower court should have included all forty days in the fourth period as being part of the relevant 180 days. The Commonwealth, therefore, has no basis for arguing for any exclusion of time in the fifth period.

Our calculation shows that on February 4, 1976, the Commonwealth had thirty four days left in which to bring its case against appellee to trial.[1] Of paramount importance then is the so-called sixth period, from February 4, 1976, until March 12, 1976, the date the Commonwealth filed a detainer request with federal authorities in Georgia. The lower court held this period "chargeable" to the Commonwealth because, first, its extensions, on February 4 and February 26, were invalid since appellee was incarcerated in another jurisdiction, and, second, appellee was not "unavailable pursuant to Section (d)." Slip opinion at 29. The Commonwealth makes two arguments with respect to this period. First, the Commonwealth argues that to uphold the lower court with respect to the extensions would create a number of awkward situations for the Commonwealth in the future, specifically, that it would create a "dilemma where

1. It will be recalled from the statement of facts that the complaint was filed on January 19, 1975, so that the run date for the mandatory period was July 18, 1975. From January 19 to February 2 the appellee was "available" for trial. This was a period of 14 days. Between February 2 and September 26 the appellee was unavailable for trial and this period is excluded from computation, *see Commonwealth v. Shelton, supra.* On September 26, the counting resumes because the appellee once again became "available" for trial. We have found no exclusions or extensions between September 26 and February 4, 1976, the 146th day of the mandatory period. Therefore, counting from February 4, the Commonwealth had 34 days to commence trial, *i. e.,* until March 9.

the appellee is in another jurisdiction and physically unavailable because custody cannot be obtained immediately by the Commonwealth, but is declared to be available for trial because the Commonwealth knows about his location, then, if the Commonwealth cannot apply for an extension because of the time needed to file the necessary papers to obtain custody of the appellee, the time runs against the Commonwealth who has no remedy to stop the clock." Appellant's Brief at 19. Second, the Commonwealth argues that with respect to this period appellee should be considered "unavailable" because the Commonwealth used "due diligence" in seeking his return. Appellant's Brief at 14.

We believe that the Commonwealth's argument with respect to the lower court's holding on extensions has considerable merit. An examination of our recent cases on Pa.R.Crim.P. 1100(c) extensions does not indicate that a petition under that subsection is, as the lower court seems to have believed, necessarily invalid because the defendant is not in the jurisdiction. In *Commonwealth v. Wareham,* 256 Pa.Super. 23, 389 A.2d 581 (1978), this court set out some of the requisites for a valid Pa.R.Crim.P. 1100(c) petition. We specifically noted that a defendant must be given notice of a petition to extend and an opportunity to contest, if the petition is to be considered valid. Slip opinion at 7. Nothing in *Wareham* suggests that a defendant must be present at an extension hearing. As long as he is given notice,[2] he has the opportunity to contest by asking his attorney to appear and oppose the petition. To leave the lower court's holding as is would not serve the policy considerations underlying Rule 1100. Instead of encouraging the Commonwealth to apply for extensions where it might validly need more time for trial, the holding would require the Commonwealth to stand pat and hope that it had done enough to get a defendant back to the Commonwealth to qualify for an unavailability exclusion. It seems fairer to all parties to

2. The Commonwealth would obviously have to be especially careful in giving notice to an incarcerated out-of-state defendant, but we see no reason why the standards discussed in *Wareham* cannot be met.

determine the merits of the Commonwealth's claims at the earliest possible moment, even if this means that a defendant himself may not personally appear at the extension hearing.

■ While it is clear that the Commonwealth's argument on extensions makes considerable sense, the facts of this case lead us to the same result as was reached by the lower court. Pa.R.Crim.P. 1100(c) specifies that "[s]uch application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth." Here, we are hard put to find how the Commonwealth could have made a convincing argument that it was proceeding with "due diligence," either on or before February 4, 1976, or February 26, 1976. The fact that the Commonwealth did not learn until just before the first extension was granted that appellee had been transferred by the federal authorities to Georgia does not help but rather is against the Commonwealth. The Commonwealth had known that it would need to have appellee back in Northampton County for trial on February 9, 1976. Had the Commonwealth been proceeding with due diligence, that is, the diligence due in the particular circumstances, it would have filed an interstate detainer request with the federal authorities[3] shortly after returning appellee to Philadelphia in December, 1975. *See generally, Commonwealth v. Martin,* 246 Pa.Super. 407, 371 A.2d 903 (1977). Not only did the Commonwealth fail to file a detainer request before appellee was transferred to Georgia, it did not file a detainer request until March 12, 1976. Record at 167a.

■ The Commonwealth's second argument with respect to the February 4 to March 12 period is equally unconvincing. To claim that appellee should be considered unavailable from the time the Commonwealth found out that he was in Georgia until the date it filed the proper detainer request

3. The record of the hearing on appellee's motion to dismiss under Pa.R.Crim.P. 1100(f) discloses that the District Attorney's Office knew that a federal prisoner was included as a party in the Interstate Agreement on Detainers. Record at 182a.

flies directly in the face of our holding in *Commonwealth v. Kovacs, supra.*

We therefore find that appellee was available for trial from February 4 until March 9, the last day he could have been tried under Rule 1100(a)(2), and that no valid extension was granted extending the time for trial.[4]

Affirmed.

VAN der VOORT, J., dissents.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

---

4.   Since the other four petitions for extension filed by the Commonwealth were not timely, they were invalid. Pa.R.Crim.P. 1100(c). We offer no opinion on the Commonwealth's claim concerning the so-called eighth period, from March 24 to April 2.