489 A.2d 853

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John H. TAYLOR, Appellant.**

Superior Court of Pennsylvania.

Submitted May 17, 1984.

Filed March 8, 1985.

88

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CAVANAUGH, POPOVICH and HESTER, JJ.

CAVANAUGH, Judge:

This is an appeal from the judgment of sentence entered on February 9, 1982, in the Court of Common Pleas of Allegheny County by the Honorable Samuel Strauss. Appellant was sentenced to a term of imprisonment of not less than two years or more than four years for violating the Uniform Firearms Act, 18 Pa.C.S. § 6101 et seq. Appellant avers on appeal 1) that the trial court erred in denying appellant's pre-trial motion to dismiss pursuant to Pa.R. Crim.P. 1100, and 2) that the trial court erred in denying appellant's request to suppress alleged statements made by him to the police at the time of his arrest because the Commonwealth failed to provide him the mandatory discovery required under Pa.R.Crim.P. 305(B)(1)(b). We affirm.

Appellant first contends that the trial court erred in denying his pre-trial motion to dismiss and bases this contention on the Commonwealth's alleged failure to exercise due diligence in bringing him to trial within 180 days as required by Pa.R.Crim.P. 1100. The pertinent facts relating to this contention are not in dispute.

Appellant was arrested on August 29, 1980, and charged with violating the Uniform Firearms Act, 18 Pa.C.S. § 6101 et seq. Appellant was subsequently incarcerated in a federal penitentiary in Morgantown, West Virginia, on an unrelated charge.[1] Under Rule 1100(a)(2),[2] the trial was to commence within 180 days from August 29, 1980, the date on which the complaint against the appellant was filed, or February 25, 1981. Trial was listed to commence on January 29, 1981, well within the 180 day limit. However, the trial did not commence on that day because appellant had escaped from the federal correctional facility in Morgantown, West Virginia on December 25, 1980. At the time of his escape, appellant knew that trial was listed for January 29, 1981. He then fled to Canada where he was apprehended on January 15, 1981. It was not until February 13, 1981, however, that he was returned to federal custody at Buffalo, New York. He was not returned to Pennsylvania or to the federal institution in West Virginia where the Commonwealth previously knew it had access to him. On February 6, 1981, the Commonwealth filed a petition to extend the time to commence trial pursuant to Rule 1100(c). On February 11, 1981, defense counsel filed an answer opposing the grant of this petition. The order was granted by the Honorable Ronald E. Dauer on February 19, 1981. This order stated that appellant "shall be tried not later than 45 days after [his] return to Pennsylvania."

1. Because neither the appellant nor the Commonwealth contend to the contrary, for purposes of this appeal we shall treat the appellant's incarceration in West Virginia up until December 25, 1980, the same as we would had the appellant been incarcerated *in this Commonwealth*.

2. **Rule 1100. Prompt Trial**
   (a)(1) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1973 but before July 1, 1974 shall commence no later than two hundred seventy (270) days from the date on which the complaint is filed.
   (2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

On June 23, 1981, the Commonwealth filed a Writ of Habeas Corpus ad prosequendum requesting the extradition of appellant from Buffalo, New York, to stand trial in Pennsylvania. Pre-trial proceedings commenced on July 29, 1981, and trial commenced the following day before the Honorable Samuel Strauss, clearly within the 45 days permitted by the order of February 19, 1981. Appellant was found guilty, and this appeal followed.

Appellant argues that the Commonwealth owed a duty to exercise due diligence to bring him to trial but that instead it waited several months from the time the extension order was granted to do so [3] even though it was within the Commonwealth's power to procure his return prior to that time. Appellant contends that the Commonwealth's duty to exercise due diligence should be implied or read into Judge Dauer's order of February 19, 1981. The Commonwealth, on the other hand, argues that it had no duty to exercise due diligence because the order did not explicitly require it.

■ Under Rule 1100, the Commonwealth has 180 days in which to bring the defendant to trial. However, Rule 1100 is tolled under the following circumstances:

### Rule 1100. Prompt Trial

(c)(1) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial.

(2) A copy of such motion shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon.

3. The appellant's brief is somewhat confusing in this respect. The brief states that the Commonwealth waited *five* months from the time the order was granted until it filed extradition papers to secure appellant's return. In fact, the order was granted February 19, 1981, and the Commonwealth filed extradition papers on June 23, 1981. Furthermore, the appellant concedes that his unavailability due to his escape resulted in a new "run" date (the last date on which the Commonwealth could bring the defendant to trial within 180 days) of April 13, 1981.

(3) Such motion shall set forth facts in support thereof, and shall be granted only upon findings based upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth and, if the delay is due to the court's inability to try the defendant within the prescribed period, upon findings based upon a record showing the causes of the delay and the reasons why the delay cannot be avoided.

(4) Any order granting a motion for extension shall specify the date or period within which trial shall be commenced. Trial shall be scheduled for the earliest date or period consistent with the extension request and the court's business, and the record shall so indicate.

(d) In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest; provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence;

(2) any period of time for which the defendant expressly waives Rule 1100;

(3) such period of delay at any stage of the proceedings as results from:

(i) the unavailability of the defendant or his attorney;

(ii) any continuance granted at the request of the defendant or his attorney.

Rule 1100(c)(3) and (d)(1) expressly require that the Commonwealth exercise due diligence to bring the defendant to trial in order to toll the Rule.[4] Although Rule 1100(d)(3)(i)

---

**4.** Technically, the two sections seem to refer to different sorts of "due diligence." 1100(c)(3) requires that the Commonwealth show that *the trial could not be commenced* within the prescribed period despite due diligence by the Commonwealth. 1100(d)(1) seems to require due diligence in *searching for* the defendant. In fact, the "due diligence" required of the Commonwealth by these two sections (and also the due diligence required pursuant to Rule 1100(d)(3)(i)) are generally not distinguished in the opinions interpreting the Rule. The due diligence required is *due diligence in bringing the defendant to trial either within the prescribed period, or if due diligence was exercised to*

(the unavailability of the defendant or his attorney) does not explicitly require due diligence,[5] it has been held that a showing of due diligence by the Commonwealth is necessary before a defendant will be labelled "unavailable."[6] We shall first examine whether the order in question was properly granted.

■ The Commonwealth is under no duty "to file a petition for an extension of time when the delay is caused by the unavailability of the defendant", but rather, the extension is "automatic". *Commonwealth v. Wright*, 260 Pa.Super. 341, 394 A.2d 582 (1978); *see also Commonwealth v. Richbourgh*, 246 Pa.Super. 300, 369 A.2d 1331 (1977); *Commonwealth v. Roman*, 494 Pa. 440, 431 A.2d 936 (1981); *Commonwealth v. Williams*, 284 Pa.Super. 125, 425 A.2d 451 (1981). *But c.f. Commonwealth v. Minoske*, 295 Pa.Super. 192, 441 A.2d 414 (1982) (a petition to extend time was not deemed improper though appellant was said to be "unavailable").

■ In the instant case, it may be said that appellant was unavailable when the Commonwealth petitioned for the extension. He had been missing from the correctional facility in West Virginia for over a month, and had not as yet been turned over to federal custody. There were also charges pending against him in Canada and West Virginia which would militate against his availability to stand trial here at the Commonwealth's convenience. The Commonwealth's petition averred appellant's unavailability and Judge Dauer apparently accepted the veracity of this averment when he granted the order.

We do not fault the Commonwealth or Judge Dauer for erring on the side of caution, however, in respectively seeking and granting the extension order in question. At

*no avail, then as quickly as possible after the 180 day period has passed.*

5. The comment to this rule formerly required a showing of due diligence but at present does not.

6. *See Commonwealth v. Pichini*, 308 Pa.Super. 425, 454 A.2d 609 (1982). The defendant's "unavailability" in *Pichini* was not due to a willful dereliction of a duty.

the time the Commonwealth petitioned for the extension, appellant had already been apprehended in Canada and there may well have been a question as to whether he would be "available" in the near future. A defendant's right to a speedy trial should never be dispensed with lightly, and so, rather than dismiss the order as "improperly granted", we believe that the Commonwealth exhibited laudable caution in petitioning for the extension in this instance.

Having thus concluded that the order was not improperly granted, we further conclude that the duty to exercise due diligence should not be implied or read into it. We do not, however, base this decision solely on an explicit reading of the words of the order itself. While it was permissible for the Commonwealth to rely on an explicit reading of the order and to thus conclude that it owed no duty to exercise due diligence, our holding would be the same *even if the order had never been granted.* The underlying reason that the Commonwealth owed no duty to exercise due diligence was that the appellant in this case committed a willful act in dereliction of a serious societal duty after having been subjected to process of court. A sound reading of the cases decided under Rule 1100 compels this conclusion and our explanation follows.

In analyzing whether an appellant's speedy trial rights have been violated for failure to bring him to trial within 180 days, we must seek guidance in authority beyond the nearest desk calendar. One case of recent vintage is *Commonwealth v. Crowley,* 502 Pa. 393, 402, 466 A.2d 1009, 1014 (1983), where Justice Hutchinson, writing for the majority, stated: "The goals of efficiency and ease of administration which Rule 1100 serves are worthy; they should not be exalted at the expense of justice. Thus, in interpreting our Rule 1100, we must throw away the stopwatch and pick up the scales of justice." [7]

7. Justice Zappala, dissenting in *Commonwealth v. Terfinko,* 504 Pa. 385, 394, 474 A.2d 275, 279 (1984) wrote: "Rule 1100 was promulgated to ensure a defendant's right to a speedy trial and to avoid a case-by-

Turning to the instant case, the appellant was incarcerated in a federal correctional facility, knew that society ordained that he stay there, knew the date of his trial listing, but escaped nonetheless. His failure to appear for trial on the date set is strongly analogous to the situation where a defendant is released on bail and is duly notified of the date of his arraignment, but fails to appear for the arraignment. In both cases the defendants have committed willful acts in dereliction of a serious societal duty after having been subjected to the process of the courts of this Commonwealth. There exists a consistent and thoughtful line of cases dealing with the bail situation, just described. We believe that the rationale applied in those cases should apply with at least equal force to the instant case.

A distinguished member of this line of cases is *Commonwealth v. Cohen*, 481 Pa. 349, 392 A.2d 1327 (1978). We find its rationale extremely helpful in deciding the case before us and believe that the words of its author, Justice (now Chief Justice) Nix, are relevant to the issue confronting us.

Where a defendant undertakes to accept the status of bail during the pendency of court proceedings he assumes the responsibility of making himself available for any court appearances required of him in connection with the action, upon receipt of reasonable notice. To focus solely upon the conduct of the Commonwealth not only ignores the defendant's dereliction of an obligation, but also places him in the position of possibly benefitting from his own wrongdoing. Where the delay results from the *defendant's willful failure to appear at the appointed*

case review to determine whether that right has been violated. Consistently, this Court has ignored the clear mandate of Rule 1100 by a course of judicial amendment without formally adopting or repealing an existing Rule." Whether or not the Supreme Court "has ignored the clear mandate" of the Rule is not for us to say. We note only the trend upon which our Supreme Court has embarked in laying less stress on an absolute adherence to the 180 day period and more on a determination that justice be served. *See Commonwealth v. Crowley*, 502 Pa. 393, 466 A.2d 1009 (1983). *Commonwealth v. Terfinko*, 504 Pa. 385, 474 A.2d 275 (1984) and *Commonwealth v. Manley*, 503 Pa. 482, 469 A.2d 1042 (1983).

*time* it is obviously not the type of harm envisioned in the protections sought to be afforded by the speedy trial guarantee. To the contrary, the delay is directly attributable to the fact that he was in a bail status, and not in custody, and that he deliberately abused that prerogative ... In applying the due diligence requirement as to service of a warrant of arrest we recognized that it was the obligation of the police to notify the accused of the issuance of the warrant. *Commonwealth v. Mitchell,* [472 Pa. 553, 372 A.2d 826] *supra.* An accused, unaware that process has been issued against him, has no obligation to make himself available. Employing a due diligence criteria in such a situation provides the basis for attributing to the accused any delay that results in his apprehension. Where, however, the accused is aware of his obligation to appear and fails to do so, he may legitimately be held accountable for any resultant delay. Restated, where a warrant of arrest is involved the requirement of due diligence in the service of process is required before blame can be assigned to the suspect. Where the defendant is on bail and has notice of his obligation to appear and fails to do so, a concept of due diligence in apprehending the fugitive is misplaced in a speedy trial analysis. To rule otherwise would permit a defendant who intentionally absented himself from a scheduled court hearing to have the charges against him dismissed if the Commonwealth's efforts to locate him did not measure up to a court's standard of due diligence. Such a result is obviously absurd.

We therefore hold that a defendant on bail who fails to appear at a court proceeding, of which he has been properly notified, is unavailable from the time of that proceeding until he is subsequently apprehended or until he voluntarily surrenders himself. In such a case the Commonwealth is entitled to an exclusion of this period under section (d)(1) without the requirement of a showing of its efforts to apprehend the defendant during the period of his absence.

*Commonwealth v. Cohen,* 481 Pa. at 354–56, 392 A.2d at 1330–31. *See also Commonwealth v. Colon,* 317 Pa.Super. 412, 464 A.2d 388 (1983); *Commonwealth v. McCulley,* 270 Pa.Super. 115, 410 A.2d 1276 (1979); *Commonwealth v. Schwartz,* 304 Pa.Super. 125, 450 A.2d 133 (1982); *Commonwealth v. Snyder,* 280 Pa.Super. 127, 421 A.2d 438 (1980); *Commonwealth v. Williams,* 299 Pa.Super. 226, 445 A.2d 537 (1982); *Commonwealth v. Blackwell,* 312 Pa.Super. 117, 458 A.2d 541 (1983); *Commonwealth v. Minoske,* 295 Pa.Super. 192, 441 A.2d 414 (1982); *Commonwealth v. Bennett,* 320 Pa.Super. 150, 466 A.2d 1362 (1983).

The analogy we draw between the instant case and *Cohen* and its progeny is soundly supported in case law and in reason. It is the purpose of Rule 1100 to serve the interests of both the defendant and society. *See Commonwealth v. Genovese,* 493 Pa. 65, 425 A.2d 367 (1981). The Commonwealth is always obligated to exercise due diligence to bring the accused to trial after a warrant has been issued against him, at least until the accused is subjected to the process of the courts of this Commonwealth. Rule 1100(d)(1) requires that in order for the Commonwealth to exclude the period of time between the filing of the written complaint and the defendant's later arrest, it must be shown that the Commonwealth acted with due diligence in searching for him.

An important distinction is illustrated by comparing the facts of *Commonwealth v. Polsky,* 493 Pa. 402, 426 A.2d 610 (1981), and *Commonwealth v. McCulley,* 270 Pa.Super. 115, 410 A.2d 1276 (1979). In *Polsky,* the defendant had voluntarily absented himself *before* the complaint was filed. There, the Commonwealth had a duty to act with due diligence to secure his return to Pennsylvania. In *McCulley,* on the other hand, the Commonwealth had no duty to exercise due diligence in locating and bringing to trial a defendant who failed to appear for trial *after* he had been apprehended, arraigned, and notified of the trial date. In the latter case, the defendant was subject to the process of court, while in the former, he was not. "An accused,

unaware that process has been issued against him, has no obligation to make himself available. Employing a due diligence criteria in such a situation provides the basis for attributing to the accused any delay that results in his apprehension." *Commonwealth v. Cohen,* 481 Pa. at 355, 392 A.2d at 1330.

■ Due diligence is not needed pursuant to a warrantless arrest but *is* needed where an arrest is sought pursuant to a warrant. In the latter situation, "disruption of employment, curtailment of associations, subjection to public obloquy, and creation of anxieties" are important concerns favoring the exercise of due diligence. *Commonwealth v. Mitchell,* 472 Pa. 553, 561, 372 A.2d 826, 830 (1977). These are concerns which should matter little in the instant case where the appellant voluntarily absented himself from prison after having been subjected to process of court.

■ Once the accused is subject to process of court, a willful act in dereliction of duty is a forfeiture and serves to negate any duty the Commonwealth has to exercise due diligence in bringing him to trial. "While Rule 1100 is a shield to protect defendants from undue procrastination in the commencement of proceedings against them, we refuse to overextend the protections afforded by that Rule in a manner that would enable it to be used as a sword to allow the accused to benefit from his own misconduct." *Commonwealth v. Brightwell,* 486 Pa. 401, 408, 406 A.2d 503, 506 (1979). *See also Commonwealth v. Guldin,* 502 Pa. 58, 463 A.2d 1011 (1983).

■ That the willfulness of a defendant's actions should matter in an analysis of a defendant's speedy trial rights is given articulation within Rule 1100 itself. Under Rule 1100, 1) where a defendant waives the Rule (*see* Rule 1100(d)(2)) and, 2) where continuances are granted at the request of the defense (*see* Rule 1100(d)(3)(ii)), the Common-

wealth is not required to exercise due diligence in order to toll the Rule.[8]

■ Numerous cases concern a circumstance which bears a facial similarity to the instant case: the situation where the accused is incarcerated in a different jurisdiction and the Commonwealth is inactive in seeking his return for trial. Mere incarceration in another jurisdiction does not excuse the Commonwealth from exercising due diligence in bringing a defendant to trial. Rule 1100 will be tolled when the defendant is "unavailable" according to 1100(d)(3)(i), but a defendant will not be classified as "unavailable" absent a showing of due diligence by the Commonwealth. *See Commonwealth v. Boerner*, 281 Pa.Super. 505, 422 A.2d 583 (1980). *Commonwealth v. Alexander*, 318 Pa.Super. 344, 464 A.2d 1376 (1983); *Commonwealth v. Roman*, 494 Pa. 440, 431 A.2d 936 (1981); *Commonwealth v. Davis*, 261

---

**8.** Rule 1100 is tolled in a variety of instances where the defendant's actions, or the actions of his attorney, contribute to delay in commencing trial, even in the absence of willfulness. See *Commonwealth v. Jackson*, 262 Pa.Super. 151, 396 A.2d 690 (1978) (the appellant's attorney's thirty-nine day vacation was excluded from the 180 day period); *Commonwealth v. Bearish*, 321 Pa.Super. 541, 468 A.2d 1121 (1983) (appellant's vacation time excluded); *Commonwealth v. Whitner*, 278 Pa.Super. 175, 420 A.2d 486 (1980) and *Commonwealth v. Haynes*, 245 Pa.Super. 17, 369 A.2d 271 (1976) (delay caused by appellant's hospitalization is excluded). This line of cases includes among those instances giving rise to excludable time occurrences which are not "willful" derelictions of a duty. Occurrences such as the hospitalization of a defendant cannot be attributed to willful dereliction but Rule 1100 is tolled nonetheless because the delay *emanates from the defendant,* and the Commonwealth has not caused it. In *Commonwealth v. Morgan*, 484 Pa. 117, 398 A.2d 972 (1979), the Supreme Court of this Commonwealth wrote: "The concern of the Rule is the delay in the commencement of trial and section (d) seeks to prevent the Commonwealth from being accountable for those delays in the commencement of trial where they result from actions properly attributable to the defense." *Morgan,* 484 Pa. at 123, 398 A.2d at 974–75.

Thus, the delay need only be "attributable to the defense" to excuse the Commonwealth from the duty to exercise due diligence. However, where the defendant acts in *willful* dereliction of a serious societal duty, and this willful dereliction results in a delay in the commencement of trial, the scales of justice will tip that much further against any right he may have had to complain about the resulting delay.

Pa.Super. 204, 395 A.2d 1388 (1978); *Commonwealth v. McCafferty*, 242 Pa.Super. 218, 363 A.2d 1239 (1976). In these cases, the defendants committed no willful act in dereliction of a serious societal duty after having been subjected to the process of court. The Commonwealth simply allowed the defendants to remain in the custody of another jurisdiction while it stood idly by. The 180 day "clock" ticked away nevertheless.

Similarly, there are opinions which deal with the situation of a defendant being placed in another jurisdiction's custody after first having been incarcerated in this Commonwealth. *Commonwealth v. Kovacs*, 250 Pa.Super. 66, 378 A.2d 455 (1977); *Commonwealth v. Clark*, 248 Pa.Super. 184, 374 A.2d 1380 (1977). Once again, the taint of a volitional act in dereliction of a duty is missing and, as in the previous situation, Rule 1100 will not be tolled.

Despite appellant's escape, he would have us hold that the Commonwealth violated its duty of due diligence. The adoption of this position would be tantamount to tossing the authority we have cited onto a scrapheap of judicial indifference. To hold that the appellant in the instant case is entitled to the same standard of due diligence that we would afford an appellant who accepts his confinement without flight or one who diligently appears for his arraignment is contrary to reason and authority.

Even if the trial record illuminated the facts as to whether or not the Commonwealth exercised due diligence, we would not consider the record as to this issue because *no such duty was owed. Commonwealth v. Minoske*, 295 Pa.Super. 192, 441 A.2d 414 (1982).

We can only assume that because trial was listed for January 29th, it would have commenced on that date had appellant not escaped. Appellant was ultimately apprehended, it is true. But the apprehension was not accomplished by instrumentalities of the Commonwealth. Appellant's apprehension and subsequent imprisonment in New York were surely not volitional acts on his part, but they

*resulted from* a volitional act of a serious nature—his escape of December 25, 1980.

Assuming that the revised 180 day period was to expire on April 13, 1981 (*see* footnote 3), and that the Commonwealth waited until June to file for his extradition even though the appellant may have been "available" earlier, this entire period shall be charged to the appellant. "It is obvious that in many cases the defendant, by his unavailability, can occasion a delay which is much greater than the actual time of his unavailability. The rule charges this delay to the defendant." *Commonwealth v. Perry*, 296 Pa.Super. 359, 362, 442 A.2d 808, 810 (1982). *See also Commonwealth v. Colon*, 317 Pa.Super. 412, 464 A.2d 388 (1983).

Finally, we observe that there are indeed cases which can be read to be at odds with our present analysis. In *Commonwealth v. Goodman*, 260 Pa.Super. 266, 393 A.2d 1256 (1978), it was held that the Commonwealth was required to exercise due diligence in securing the return of a defendant who escaped after having been subject to the process of court. Rule 1100 was not tolled, according to this decision, because of the Commonwealth's failure to exercise due diligence.

*Goodman* cites two cases in support of its holding, *Commonwealth v. McCafferty*, 242 Pa.Super. 218, 363 A.2d 1239 (1976), and *Commonwealth v. Kovacs*, 250 Pa.Super. 46, 378 A.2d 455 (1977). Both have been dealt with previously in this opinion. Both involve defendants who were either *placed* or *allowed to remain* in confinement in other jurisdictions. They had not voluntarily absented themselves in flagrant violation of a serious societal duty. Thus, both are distinguishable from the *Goodman* facts. Furthermore, *Goodman* does not cite *Commonwealth v. Cohen, supra,* or any of the cases decided under its authority in discussing this issue. And, of course, the case precedes the Supreme Court's opinions in *Commonwealth v. Crowley* (supra) and *Commonwealth v. Terfinko*, 504 Pa. 385, 474 A.2d 275 (1984) where Justice Hutchinson wrote:

It is evident from the record of the Rule 1100 hearing that the constitutional standard for a speedy trial has been met in this case, and we now decline to exercise a stopwatch approach to the definition of "due diligence". Therefore, we hold the court *en banc* acted incorrectly in separately metering each step in the pre-trial process against the due diligence standard. Rule 1100 provides an overall standard of 180 days, not separate standards for each step. Its due diligence exception should be measured against the whole not its separate parts.

*Terfinko*, 504 Pa. at 392, 474 A.2d at 279.[9]

These opinions are representative of our Supreme Court's developing philosophy with respect to the interpretation of Rule 1100.

In one respect, *Goodman* is distinguishable from the instant case. In the instant case, the Commonwealth was granted an order extending the time to commence trial. This order allowed the Commonwealth to await the appellant's return to the Commonwealth before it was required to try him. No such order was present in *Goodman*. Notwithstanding this distinction, and in light of the other authority we cite here, we do not believe that *Goodman* dictates a result different from the one we now reach.[10]

**9.** It appears to us that the *Goodman* court separately metered each step in the pre-trial process—a practice that the *Terfinko* court held to be incorrect.

**10.** The other opinion we find troubling is *Commonwealth v. Ressler*, 308 Pa.Super. 438, 454 A.2d 615 (1983). We note that the troubling language there is dicta and that the holding itself is not unsound. The pertinent facts are as follows. Appellant, having been arraigned and admitted to bail, failed to appear for the preliminary hearings scheduled for January 11. The delay that followed was clearly attributable to appellant. Preliminary hearings were scheduled for March 10 and April 7, but on both occasions the court found they were not held due to a lack of due diligence by the Commonwealth. We fail to see how the duty of due diligence, once discharged (because of appellant's failure to appear), again became a binding obligation on the Commonwealth. In any event, we do not believe that the rationale employed in *Ressler* survives the one espoused in the recent case of *Commonwealth v. Terfinko*, supra. It appears to us that the *Ressler* court, like the *Goodman* court, has engaged in "separately metering each step in the pre-trial process"—a practice now forbidden by *Terfinko*.

While we would hope that our law enforcement officials would engage every escaped convict in assiduous pursuit, we hardly think that society's interests would be well served by ordering the appellant's discharge in this case. In determining whether to confine or discharge an appellant under Rule 1100, we must refrain from using an atomic-precision clock lest we sacrifice justice in the process.

Mr. Taylor has had his day in court, and for the reasons stated above, we hold that his trial was commenced in a timely fashion and that his rights under Rule 1100 have not been violated.

Appellant also alleges that a new trial should be granted because the Commonwealth introduced an allegedly inculpatory statement against him without providing him mandatory discovery pursuant to Rule 305(B)(1)(b).[11]

The allegedly inculpatory statement was made at the time of appellant's arrest. Appellant was leaning against a building. Near him was a parked car[12] with its engine idling. One of the arresting officers testified that upon his arrest, appellant indicated a desire to have the officer turn off the car's engine. The officer testified that the appellant said either "shut my car" (sic) or "I want to shut my car

---

**11.  B.  Disclosure by the Commonwealth**

(1) *Mandatory:* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth;

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made, which is in the possession or control of the attorney for the Commonwealth;

**12.**  The officer testified that appellant was "beside" the car while appellant testified he was ten feet from it.

off." This testimony conflicted with that of the appellant who claimed that he had said "shut *the* car off." The appellant now asserts that the Commonwealth's failure to provide the contents of the officer's testimony as part of mandatory discovery warrants the granting of a new trial.

It is appellant's contention that the car's impoundment and the issuance of a search warrant were apparently accomplished in the belief that the car belonged to the appellant. The search resulted in the finding of illegal firearms within the car.

We fail to see how a discrepancy between the words "my" and "the" could warrant the granting of a new trial in this case. Appellant was leaning against a building, perhaps ten feet from the vehicle in question. The engine was idling at the time. Upon being arrested, appellant expressed a desire to have the engine turned off. Under the circumstances, it matters not if appellant believed he had said "the" car even though the officer testified that the appellant had said "my" car. The inference that the car was his or was in his control was so overwhelming that we need delve no further into the murky recesses of this contention.

Under Rule 305E, it was within the trial court's discretion to admit the officer's statement even if the discovery Rule was violated.[13] Whatever inculpatory content may have been associated with the officer's statement, it was at most only minimally more harmful to appellant than the statement appellant testifies to having made.

For these reasons, we affirm the judgment of sentence.

13.  **E.  Remedy**
      If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.