**Dale Burton JONES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 90–151.**

Supreme Court of Wyoming.

June 13, 1991.

Rehearing Denied July 12, 1991.

Michael J. Krampner, Casper, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., and Mary B. Guthrie, Senior Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

## OPINION

MACY, Justice.

In *Jones v. State*, 777 P.2d 54 (Wyo. 1989), this Court reversed Appellant Dale Burton Jones' conviction for conspiracy to commit murder in the first degree and remanded the case for a retrial. A new trial was held, and Appellant was again found guilty and sentenced to life imprisonment. Appellant appeals from that conviction and sentence.

We reverse and remand for a new trial.

The issues presented by Appellant are:

I. Did the trial court err in refusing to dismiss the Information because the Appellant's trial did not commence "within one hundred and twenty (120) days of the arrival" of the Appellant in Wyoming, as required by Article IV(c) of the Interstate Agreement On Detainers (IAD) as adopted by W.S. § 7–15–101 *et seq.*?

II. Did the trial court err in denying Appellant's Motion For A Mistrial And/Or New Trial when it was conclusively shown that the witness who testified that he had heard Appellant "confess" to the offense had given false testimony?

III. Did the prosecutor engage in conduct requiring reversal when he repeatedly asserted to the jury his personal knowledge and belief in the credibility of the State's witnesses, and his personal knowledge of the facts of the case in closing argument?

This case involves a conspiracy in which Appellant and an acquaintance allegedly hired Roy Alma Young, Jr. in June 1987 to travel from Salt Lake City, Utah, to Sheridan, Wyoming, to murder Ray Vigil. Following the incident, in December 1987 Appellant pleaded guilty in the United States District Court for the District of Wyoming to conspiracy to commit murder. In a separate state court proceeding, Appellant was tried on a charge of conspiracy to commit first-degree murder. Appellant was convicted and sentenced to life imprisonment. On July 3, 1989, this Court reversed Appellant's state court conviction because, in the presence of the jury, the prosecution called two witnesses who the court and the prosecution knew would invoke their fifth amendment privileges not to testify. *Jones*, 777 P.2d at 61.

Following reversal of the state conviction in *Jones*, Appellant was transported from the Wyoming State Penitentiary to a federal prison in Oklahoma to begin serving his federal sentence. On July 26, 1989, this Court issued its mandate remanding the case for retrial. Appellant was transported to the Sheridan County jail from the federal correctional institute in El Reno, Oklahoma, for trial. Appellant arrived in Sheridan on September 16, 1989, and his trial began on May 8, 1990.

### 120–Day Trial Requirement Under the Agreement on Detainers

■ Wyo.Stat. § 7–15–101 (1987) states in pertinent part:

#### Article IV

\* \* \* \* \* \*

(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause

shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

\* \* \* \* \* \*

### Article VI

(a) In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, *the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial,* as determined by the court having jurisdiction of the matter.

(Emphasis added.)

Appellant asserts that the State violated the time limitation because his trial was not commenced within 120 days of his arrival in Wyoming. Appellant contends that the remedy for a time limit violation is reversal of the conviction and dismissal of the information with prejudice. Section 7–15–101 (Article V(c));[1] *State v. Knauff,* 115 Idaho 74, 764 P.2d 441 (Ct.App.1988); *People v. Sevigny,* 679 P.2d 1070 (Colo.1984).

The events relevant to this first issue are set out in the following chronological order:

July 26, 1989—This Court issued its mandate reversing Appellant's first conviction in this case and remanding for a retrial. *See Jones,* 777 P.2d 54.

August 2, 1989—Appellant filed his challenge for cause to Judge Wolfe.

September 6, 1989—Appellant filed eleven pretrial motions consisting of a motion for a change of venue; three motions to suppress; a motion for severance; a motion in limine regarding statements of a potential witness; a motion for discovery pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); a motion for discovery pursuant to W.R.Cr.P. 18; a motion to dismiss and/or suppress for prosecutorial misconduct; a motion in limine regarding financial books and records and related testimony; and a motion to require Appellant's custodian to present Appellant for court in civilian clothes and without restraining devices.

September 16, 1989—Appellant arrived in Sheridan, Wyoming, for retrial on the charge of conspiracy to commit first-degree murder.

November 6, 1989—The trial date was set for December 11, 1989.

November 16, 1989—Judge Wolfe granted Appellant's challenge for cause and assigned the case to Judge Hamm; the December 11, 1989, trial date was vacated without objection from either side.

February 7, 1990—Judge Hamm decided all remaining pretrial motions raised by Appellant.

February 20, 1990—Appellant filed a motion to dismiss because the State failed to bring Appellant to trial within 120 days as required by the agreement on detainers.

March 20, 1990—The trial date was set for May 8, 1990.

April 4, 1990—Judge Hamm denied Appellant's motion to dismiss.

May 8, 1990—Appellant renewed his motion to dismiss, and the court again denied the same. Appellant's retrial commenced.

May 10, 1990—Appellant was found guilty of conspiracy to commit first-degree murder.

May 14, 1990—Appellant's sentencing hearing was conducted. Appellant moved for a mistrial or, in the alternative, a new trial on the basis of newly discovered evidence of false testimony. His motion was denied.

May 21, 1990—Judgment was entered, and Appellant was again sentenced to life imprisonment.

While the total number of days between Appellant's arrival in Wyoming and his tri-

---

1. Article V(c) of § 7–15–101 provides:

    (c) If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the periods provided by this act, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

al exceeded the 120 days provided for in the agreement on detainers, the State contends that the delay occasioned by Appellant filing multiple motions tolled the running of the statute. In *United States v. Nesbitt*, 852 F.2d 1502, 1516 (7th Cir.1988), *cert. denied* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989), the court stated:

> "[Article VI(a) provides] that the running of the 120–day time period shall be tolled whenever and for as long as the prisoner is unable to stand trial." The Second Circuit has interpreted the language "unable to stand trial" as excluding "all those periods of delay occasioned by the defendant." In the case at hand, we hold that both the district court's grant of a continuance on September 30, 1986, as well as the periods of delay occasioned by the multiple motions filed on behalf of the defendant, operate to toll the running of Articles III and IV * * *.

(Citations omitted.) *See also United States v. Dawn*, 900 F.2d 1132 (7th Cir.), *cert. denied* —— U.S. ——, 111 S.Ct. 368, 112 L.Ed.2d 330 (1990); *United States v. Scheer*, 729 F.2d 164 (2d Cir.1984); *Bush v. Muncy*, 659 F.2d 402 (4th Cir.1981), *cert. denied* 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 449 (1982); and *United States v. Black*, 609 F.2d 1330 (9th Cir.1979), *cert. denied* 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980).

As we did in *Green v. State*, 784 P.2d 1360 (Wyo.1989), we compute the number of days on which Appellant was unable to stand trial to determine whether he was brought to trial within the statutory period. Appellant arrived in Wyoming on September 16, 1989. At that time, the trial court had before it a challenge for cause to Judge Wolfe and eleven pretrial motions raised by Appellant. Judge Wolfe recused himself on November 16, 1989, and assigned the case to Judge Hamm.

■ Judge Hamm ruled on Appellant's pending motions on February 7, 1990. Since it is the duty of the trial judge who will preside over the trial to rule on pretrial motions, such decisions could not have been made until Judge Hamm was assigned to hear the case. A delay of almost three months for the new judge to assume charge of a proceeding and to decide motions of the type involved here is neither unexpected nor unreasonably lengthy. *United States v. Taylor*, 861 F.2d 316 (1st Cir.1988); *State v. Finley*, 277 S.C. 548, 290 S.E.2d 808 (1982).

We hold that the trial court did not err in refusing to dismiss the information against Appellant. The 120–day time limit was tolled until February 7, 1990, for the reasons explained above. Only ninety-one days elapsed from that date to the date of the trial.

### Denial of Appellant's Motion for a New Trial

■ Appellant's second issue asserts that the trial court erred in denying Appellant's motion for a new trial on the basis of newly discovered evidence. In its case-in-chief, the prosecution called a court reporter to read from the December 1987 transcript she made during a United States District Court proceeding involving Appellant. The federal proceeding, a factual basis determination for Appellant's plea of guilty to the federal offense of conspiracy to commit murder, dealt with the same criminal conduct as is at issue here. Since the court reporter was unable to identify Appellant as the person whose testimony she had recorded, the State called Ronald Orton, a detective sergeant for the Sheridan County sheriff's office, to testify as to the identity of Appellant and to lay foundation for the authenticity of the federal court transcript. The following colloquy occurred between the prosecutor and Detective Orton:

> Q. Detective Orton, were you present at an official proceeding which occurred in Cheyenne on December 29th, 1987, during which the defendant Dale Jones gave testimony?
>
> A. Yes, sir, I was.
>
> Q. Did he give testimony under oath at that time?
>
> A. Yes, sir.
>
> Q. Was there a court reporter there?
>
> A. Yes, sir.
>
> Q. Was that a young woman?

A. Yes, sir, it was.

Q. Have you seen her in the courtroom today?

A. I saw her outside just a while ago.

Q. Did the person—Is the person who testified there as Dale Burton Jones present in this courtroom?

A. Yes, sir.

Q. Would you indicate where?

A. The gentleman in the coat over here, with the glasses on. He has a yellow shirt and brown or grey coat.

Shortly after the conclusion of the trial, it was discovered that Detective Orton had not been present in the United States District Court when Appellant made his statement.[2] At Appellant's sentencing hearing four days after the jury returned with its verdict, the following colloquy occurred between Appellant's counsel and Detective Orton:

Q. Deputy Orton, you're the same Ronald Orton that testified in the trial of this case last week; is that correct?

A. That's correct.

Q. At that time, one of the things you testified to was the identity of a person who had made certain statements in the United States District Court for the District of Wyoming in Cheyenne on or about December 29, 1987; is that correct?

A. Yes, sir.

Q. The gist of those statements, as you will recall, is in the nature of a confession for a factual basis allegedly by a Dale Jones to the offense of conspiracy to use interstate phone lines for the purpose of committing a murder for hire, a violation of 18 U.S.C. Section 371. Now, if you're not familiar with the statute numbers, I understand that, but otherwise, is that true?

A. That's correct.

Q. All right. Mr. Orton, were you in the United States District Court for the District of Wyoming on or about December 29, 1987?

A. No, sir.

Q. Okay. At the time you testified about certain statements or confessions essentially made by Dale Jones, at that time, * * * you were not present—

A. No, sir.

Q. —in the United States District Court.

A. No, sir.

Q. Okay. Your testimony that you were present and that you could identify the defendant in this case as the person who made those statements was incorrect, wasn't it?

A. Yes, sir.

Q. Do you know now where you were on the date that was in question at that time on or about December 29, 1987, when a statement was made in the United States District Court?

A. Yes, sir.

Q. Where were you on that date?

A. In Sheridan, Wyoming.

\* \* \* \* \* \*

Q. * * * Just so that there is no doubt in the record, your testimony on that subject was false, wasn't it? I'm not accusing you of deliberately deceiving people, but the information you gave was false, wasn't it?

A. Yes, sir.

Q. As a matter of fairness, do you want to explain to his Honor how it came about that you gave that false testimony[?]

A. Yes, sir. I had been in the United States District Court in Cheyenne the week before, and I inadvertently referred to that date thinking that was the same date this same matter came up that we discussed, but I was wrong by a week.

\* \* \* \* \* \*

2. There is absolutely no evidence to suggest that the prosecutor was aware that Detective Orton had not, in fact, been present to hear Appellant's federal court testimony. As soon as it was brought to his attention that perhaps Detective Orton had not been present, the prosecutor initiated an investigation of the incident and confirmed Detective Orton's absence at Appellant's federal court appearance.

Q. As you've looked into it, what you've come to realize is that the only thing you ever saw Dale Jones do in the United States District Court for the District of Wyoming was to plead not guilty to the charge that was prof[f]er[ ]ed against him; is that correct?

A. That's correct.

Given this development, Appellant moved for a mistrial or, in the alternative, a new trial on the basis of newly discovered evidence. Appellant argued that the prosecutor relied upon unsubstantiated evidence of Appellant's alleged federal court "confession" in his closing argument. Appellant further maintained that without this evidence the jury probably would have reached a different verdict. In denying Appellant's motion and sustaining the conviction, the trial court relied, in effect, upon the sufficiency of other evidence presented at trial. The trial court sentenced Appellant to life imprisonment.

W.R.Cr.P. 34 governs motions for new trials and states in pertinent part:

The court on motion of a defendant may grant a new trial to that defendant *if required in the interest of justice.* * * *

(a) A motion for a new trial based on any grounds, except newly discovered evidence, shall be made within ten (10) days after verdict or finding of guilty or within such further time as the court may fix during the ten (10) day period. The motion shall be determined and a dispositive order entered within ten (10) days after the motion is filed and if not so entered shall be deemed denied, unless within that period the determination shall be continued by order of the court, but no continuance shall extend the time to a day more than thirty (30) days from the date the verdict or finding of guilty is returned.

(b) A motion for a new trial based on the grounds of newly discovered evidence may be made only before or within two (2) years after final judgment but if an appeal is pending, the court may grant the motion only on remand of the case.

(Emphasis added.)

This Court has not had occasion to examine a motion for a new trial on the basis of false testimony of this specific kind. However, in *State v. Taylor,* 287 N.W.2d 576, 578 (Iowa 1980), a case involving recanted trial testimony and a motion for a new trial, the Iowa Supreme Court analyzed the new trial motion as follows:

As pointed out in *State v. Compiano,* 261 Iowa 509, 517, 154 N.W.2d 845, 849 (1967) such a motion is not really based on newly discovered evidence, although it is frequently referred to in that way. Instead it points to certain testimony as false—either purposely or inadvertently—and asserts defendant was thereby denied a fair trial.

Though Appellant moved for a new trial on the basis of newly discovered false evidence, we adopt the characterization in *Taylor* and hold that the testimony was not "newly discovered" evidence but was, instead, evidence of false testimony brought to the trial court's attention within the ten-day period allowed in W.R.Cr.P. 34(a). We hold that the trial court and both parties erred as a matter of law in viewing this as a newly discovered evidence problem.

We examine the particular facts and circumstances in each case to determine whether the trial court abused its discretion in failing to grant an appellant's motion for a new trial. *Siegert v. State,* 634 P.2d 323 (Wyo.1981). It is undisputed that the detective's testimony was false. Although the State presented other evidence of Appellant's guilt, Appellant's federal court statement admitting that he had committed the crime was extremely incriminating. The district court's determination that sufficient evidence existed to convict Appellant absent the federal court statement invaded the province of the jury. It is for the jury rather than for the judge to decide whether a defendant is guilty beyond a reasonable doubt. *See Baum v. State,* 745 P.2d 877 (Wyo.1987); and *Stewart v. State,* 724 P.2d 439 (Wyo.1986).

We hold that under W.R.Cr.P. 34, which allows the district court to grant a new trial in the interest of justice, the district court abused its discretion when, after being confronted with uncontroverted evidence of the detective's false testimony, it declined to grant Appellant's motion for a new trial.

### The State's Closing Argument

█ Since we reverse Appellant's conviction because of Detective Orton's false testimony and Appellant's right to a new trial, it is unnecessary to decide the third issue presented in this appeal. We note, however, that a prosecutor's use of his personal opinion during closing arguments may be a ground for reversal under *Browder v. State*, 639 P.2d 889 (Wyo.1982).

Reversed and remanded for a new trial.

URBIGKIT, Chief Justice, concurring in part and dissenting in part.

I agree that this conviction should be reversed based on the perjured testimony by which the conviction was derived. Although recognizing that our system should not countenance perjured testimony for conviction, yet apparently it is found, we do not prosecute that crime when it involves the actions of law enforcement officers.[1] *Cf. Terrell v. State*, 801 S.W.2d 544 (Tex. App.1990). *See however Cooney v. Park County*, 792 P.2d 1287 (Wyo.1990), *cert. granted and judgment vacated* — U.S. ——, 111 S.Ct. 2820, 115 L.Ed.2d 965 (1991) (No. 90–134, decided 6/10/91); *Gale v. State*, 792 P.2d 570 (Wyo.1990); and *Petition of Padget*, 678 P.2d 870 (Wyo.1984).

### I.

### THE STATUTE

I cannot, however, concur with the majority's holding that W.S. 7–15–101 (Wyo-

ming's Interstate Agreement on Detainers (IAD)) was not violated by court created delays in this case which extended beyond the statutory time.

W.S. 7–15–101, Article IV(c) provides:

In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

W.S. 7–15–101, Article VI(a) provides:

In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

"The Interstate Agreement on Detainers * * * is a compact among 48 States, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. The Agreement was drafted in 1956 by the Council of State Governments * * * " and "is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3 * * *." *Carchman v. Nash*, 473 U.S. 716, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). The statute "is an interstate compact approved by Congress and is thus a federal law subject to federal rather than state construction." *Cuyler v. Adams*, 449 U.S. 433, 438, 101 S.Ct. 703, 706, 66 L.Ed.2d 641 (1981).

The history and effect of the IAD is described by Justice White in *United States v. Mauro*, 436 U.S. 340, 349–50, 98 S.Ct. 1834, 1841–42, 56 L.Ed.2d 329 (1978) (footnote omitted):

---

**1.** As recognized by the majority, the act of the prosecutor to uncover the perjury used for conviction is commendable and accords with standards of professional ethics obligatory upon all attorneys. I do not understand, however, why a criminal charge did not follow if we believe in even-handed justice. Perjury remains the corrosive deterrent in justice delivery system opera-

tion—no matter who gave the perjured testimony. A contrite heart by the perjuring law enforcement officer is not sufficient punishment for his criminal offense. See the discussion of perjury in *Cooney v. Park County*, 792 P.2d 1287 (Wyo.1990), *cert. granted and judgment vacated* — U.S. ——, 111 S.Ct. 2820, 115 L.Ed.2d 965 (1991).

The origins of the Agreement date back to 1948, when a group known as the Joint Committee on Detainers issued a report concerning the problems arising from the use of detainers and expressing five aims or principles for the guidance of prosecuting authorities, prison officials, and parole authorities. These guiding principles, which later served as the underpinnings of the Agreement, were as follows:

"1. Every effort should be made to accomplish the disposition of detainers as promptly as possible.

"2. There should be assurance that any prisoner released to stand trial in another jurisdiction will be returned to the institution from which he was released.

"3. Prison and parole authorities should take prompt action to settle detainers which have been filed by them.

"4. No prisoner should be penalized because of a detainer pending against him unless a thorough investigation of the detainer has been made and it has been found valid.

"5. All jurisdictions should observe the principles of interstate comity in the settlement of detainers, and each should bear its own proper burden of the expenses and effort involved in disposing of the charges and settling detainers." Bennett, *The Last Full Ounce*, 23 Fed.Prob. 20, 22 (June 1959).

The limitations are recognized:

Two important limitations [only one of which is material here], * * *, are placed on a prosecuting authority once it has obtained the presence of a prisoner pursuant to Art. IV. Article IV(c) states that

"[i]n respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

*Id.* at 352, 98 S.Ct. at 1843.

## II.

## THE HISTORY AND CHRONOLOGY OF EVENTS

To understand the reason for the inordinate delay in the trial in this case, a recitation of events demonstrating the developed animosity between the initial trial judge (Judge 1) and the defense counsel, Michael J. Krampner, is required.

Krampner, a fee based attorney assigned by the public defender's office, had represented appellant in his first trial—which resulted in a reversal in *Jones v. State*, 777 P.2d 54 (Wyo.1989) (*Jones I*).[2] On August

---

**2.** A detailed chronology of events from reversal to retrial, including the reversal opinion of this court published July 3, 1989 and followed by the mandate on July 25, 1989, indicate:

1. On August 2, 1989, a challenge for cause was filed. This motion was first denied and, thereafter, a decision was made by the trial court following a petition for writ of prohibition, mandamus and/or certiorari filing in the Wyoming Supreme Court. The decision by the trial court on November 16, 1989 was a withdrawal and reassignment to the Honorable Kenneth G. Hamm, Retired District Judge from Sweetwater County (Judge 2), located 354 miles from the location where the case was venued in Sheridan, Wyoming.

2. On August 29, 1989, Krampner requested a hearing of the challenge for cause. No specific action was taken except the motion was explicitly denied by succeeding events.

3. On September 6, 1989, eleven motions were filed:

a. Motion to Require the Custodian of Defendant to Present Defendant for Court in Civilian Clothes and Without Restraining Devices.

b. Motion in Limine Regarding Financial Books and Records and Related Testimony.

c. Motion to Dismiss and/or Suppress for Prosecutorial Misconduct.

d. Motion for Discovery Pursuant to Rule 18, W.R.Cr.P.

e. Motion for Discovery Pursuant to *Brady v. Maryland*.

f. Motion in Limine Regarding Statements of Ray Knox.

g. Motion for Severance.

h. Motion to Suppress.

i. Motion to Suppress.

j. Motion to Suppress.

k. Motion for Change of Venue.

4. On September 15, 1989, a course of correspondence ensued where Judge 1 attempted to remove Krampner from the case which resulted in the filing of supplemental affidavits in support of the challenge for cause.

5. On September 16, 1989, appellant was transferred to Sheridan from federal confinement on an IAD transfer causing the W.S. 7–15–101, Article IV time limit to commence.

6. On October 26, 1989, an order was entered setting the challenge for cause for hearing on November 3, 1989.

7. On November 2, 1989, an order was entered setting the arraignment and scheduling conference for November 3, 1989.

8. On November 2, 1989, an order denying the challenge for cause was entered.

9. On November 3, 1989, a peremptory challenge to Judge 1 was again filed by Krampner pursuant to W.R.Cr.P. 23(d).

10. On November 6, 1989, a scheduling order was entered establishing November 13 as the date for any additional motions to be filed; a hearing on all pending motions was scheduled for November 17; and the trial to commence December 11.

11. On November 8, 1989, a petition for writ of prohibition, mandamus and/or certiorari was filed with the Wyoming Supreme Court to remove Judge 1 from the case.

12. On November 8, 1989, an order was entered withdrawing the efforts of Judge 1 to replace Krampner and rescinding the order of August 23, 1989, which had appointed other non-local counsel to represent appellant.

13. On November 14, 1989, a filing was made by the prosecution constituting a demand for notice of alibi and a motion to be provided reciprocal to discovery.

14. On November 16, 1989, following the filing of the proceeding in the Wyoming Supreme Court, Judge 1 recused himself and appointed Judge 2 to be his replacement.

15. At that time, 113 days had passed since the mandate for retrial had been entered. One hundred and five days had elapsed since the motion to remove Judge 1 had been filed and sixty-one days had passed since appellant had been returned to Wyoming from federal confinement. All that had occurred was the effort of Judge 1 to force Krampner off the case and remain on the case himself. No good cause extension in open court with appellant or his attorney present had been entered or considered. Obviously, at that point, sixty-one unexpired days had been expended leaving fifty-nine days to get the case to trial. Judge 2 was, however, in no hurry as we shall now see.

16. On December 4, 1989, a letter notification was entered from Judge 2 providing scheduling dates: December 18 for filing briefs by appellant; January 8 for the State to file answering briefs; January 22 for appellant to file reply briefs, with the further provision that the prosecutor would prepare a scheduling order in accord with the notice letter.

17. On December 7, 1989, briefs in support of the motions were filed by appellant.

18. On December 13, 1989, an order in accord with the December 4 letter was finally entered without any provision for continuance or extension pursuant to W.S. 7–15–101, Article IV(c) of the IAD.

19. On January 4, 1990, a stipulation and order was entered between counsel and approved by Judge 2 resolving issues of dress appearance, discovery, *Brady* production, motion in limine regarding alleged co-conspirator, suppression of photographs, and recognizing that no alibi defense would be raised by appellant.

20. On January 8, 1990, the State filed a brief resisting search warrant suppression, suppression of evidence acquired from third party, suppression of business records and financial information, and an objection to severance was withdrawn.

21. On January 16, 1990, appellant's reply brief was filed.

22. On January 29, 1990, a decision letter generally ruling adverse to appellant was entered.

23. On February 7, 1990, an order was entered in accord with the letter of January 29.

24. On February 20, 1990, appellant filed a motion to dismiss for failure of the State to bring appellant to trial within 120 days as required by the IAD.

25. On March 9, 1990, the State's memorandum in opposition to the motion to dismiss was filed.

26. On March 15, 1990, a reply brief was filed by appellant.

27. On March 20, 1990, the case was set for trial on May 8, 1990 at 9:00 a.m. No provision for extension of time or statement of compliance with the provisions of W.S. 7–15–101, Article IV(c) was included.

28. On March 22, 1990, a decision letter provided by a covering statement included:

Please take the action set forth therein. The opinion I have written will remain sealed to the public and may not be released to the press, radio, television of [sic] other purveyors of the news until after both trials have been completed. The order denying the motions may be released.

29. On April 4, 1990, an order denying the motion to dismiss on failure to bring appellant to trial within 120 days under the IAD was entered.

30. On April 9, 1990, a subpoena for trial to commence May 8, 1990 was entered.

What had occurred:

1. It took 113 days from the issuance of the mandate, 105 days from the motion to recuse and sixty-one days after IAD time started for Judge 1 to recuse himself.

2. Judge 2, following formal entry of an order of appointment, took fifteen days to do anything and then established a motion filing and briefing schedule of thirty-six days.

3. Appellant filed responsive documents as required in three days.

2, 1989, Krampner, continuing his representation of appellant, filed a challenge for cause pursuant to W.R.Cr.P. 23(e) requesting reassignment of the case by Judge 1. The affidavit in support of the challenge for cause claimed that the prosecutor in the first trial obtained an ex parte order from Judge 1 that authorized the telephone company to deliver certain records to the prosecution; that Judge 1 issued another ex parte order directing the American Express Company to release certain records to the Sheridan County Attorney's office; and that when Krampner sought access to those records, court personnel told him the files could only be seen with Judge 1's permission and that a hearing would be needed before permission could be given even though the prosecution had free access. During the first trial, Judge 1 told Krampner that he could cross-examine only by asking questions that required a simple "yes" or "no" answer; and, thereafter, Judge 1 told Krampner not to object to the trial court's questions that appeared designed to rehabilitate a state's witness after cross-examination, advised Krampner that he would like to try the case for the prosecution, and suggested to the prosecutors how to more effectively examine their witnesses, etc.

Instead of taking action on the challenge for cause, Judge 1 inappropriately responded and entered an order naming State Public Defender Leonard Munker to represent the two defendants at a scheduled hearing. No notice of that hearing was provided by the trial court to either Krampner or the other defense counsel. A succeeding order designated public defender Wyatt Skaggs, resident in Laramie, Wyoming, to represent the defendants. *Notice of neither order was furnished to either initial defense counsel,* although Skaggs sent copies to Krampner and the other defense counsel with the suggestion that they were the responsible attorneys.

Krampner protested by letter to Judge 1:

I understand that recently someone in your office has been setting, or attempting to set, hearings in the referenced case. That person, whoever it may be, is either laboring under the misapprehension, or adopting the pretense, that I do not represent Dale Jones, and therefore, failing to notify me of settings in this case. I realize that it is probably not the judge's responsibility to straighten out this sort of administrative detail, so that I, as counsel for one of the parties, am notified of settings, and the like. But if you would look into this matter, and direct the appropriate people on the court staff so that they do not perpetuate this error, I would be most appreciative.

Enclosed please find my Request for Setting for the Challenge For Cause to Your Honor. Kindly ask the appropriate court personnel to set it for hearing at your earliest convenience.

Judge 1 answered:

I am in receipt of your letter of August 28, 1989. I have also received and reviewed your Challenge for Cause along with the attached affidavit filed on August 2, 1989. Mr. Dollison also filed on August 2, 1989, a Motion for Disqualification and supporting affidavit. Along with the aforesaid Motion, Mr. Dollison also filed on August 2, 1989, a Motion to Appoint Counsel for Mr. Jones and Mr. Knox suggesting that Mr. Dollison and yourself be appointed by this Court to represent Mr. Jones and Mr. Knox as they are now indigent persons. That Mo-

---

4. A stipulation was entered in twenty-eight days.

5. The adverse trial court decision on the pending motions took seventy-four days from the date of appointment, where the motions had been on file since September 6, 1989 and the first response of the prosecutor to the motions was made on January 8, 1990 or four months later.

6. The total time from appearance in the state to the date the trial commenced was 234 days. The only reasonable excludable time, even if the authorities cited by the State are perfunctorily accepted determining that average competence required of defense counsel as evidenced by appropriate motion filing which then constitutes an extension of time under the statute, is the period from December 13, 1989 for briefing schedule to decision which was forty-seven days. Unexcused time totals 187 days or sixty-seven days longer than the time permitted by the statute and federal compact.

tion represents to me that neither yourself [n]or Mr. Dollison have been retained by the Defendants to represent them in any further matters. It is this Court's intention to have a hearing to determine if in fact the Defendants, Dale Jones and Ray Knox, are indigent, and if proven so, to appoint counsel. It is also in the Court's discretion, based upon the presented facts, to determine if each Defendant need[s] separate counsel or if one attorney can represent both Defendants competently and effectively. For the purposes of such hearing, Mr. Wyatt Skaggs of the Public Defender's Office has been appointed by this Court to represent Mr. Jones and Mr. Knox. Therefore, in the Court's opinion, he was the only counsel of record who needed to be notified of such hearing.

As for your Challenge for Cause, Request for Setting, and Mr. Dollison['s] Motion For Disqualification, it is this Court's opinion that as neither of you are counsel of record at this time based upon the Motion To Appoint counsel based on the contention that the Defendants are indigent, neither of you have any standing to file such motions at this time and am, therefore, denying your request for setting.

As far as any one of the Court's personel [sic], I am quite sure that no one of them did intentionally "perpetuate" any error and I am additionally quite sure that there is no "administrative detail" that need be straightened out with regard to this matter. The personel [sic] surrounding this Court have done exactly as this Court has instructed them to do.

Should you have any further questions or concerns, I would be happy to visit with you about them.

Krampner filed another challenge for cause and peremptory challenge. Judge 1 continued to ignore the challenges to his continued retention in the cases and set the cases for trial on December 11, 1989. On November 8, 1989, he finally rescinded the order appointing someone other than Krampner to represent appellant and, on that identical day, a petition was filed in the Wyoming Supreme Court as a writ of prohibition, mandamus, and/or certiorari proceeding to remove Judge 1. Upon being advised of the filing, Judge 1 quickly recused himself on November 16 and then assigned the case to a retired judge, Judge 2, who lived completely across the state. This was certainly not a random assignment. *Matter of Yagman*, 796 F.2d 1165, 1177, *opinion amended and reh'g denied* 803 F.2d 1085 (1986), *mandamus granted* 815 F.2d 575 (9th Cir.), *cert. denied* 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987); *United States v. Flynt*, 756 F.2d 1352, 1355 n. 2 (9th Cir.1985).

### III.

### CONTENTION OF APPELLANT

Appellant's brief explains:

It is noteworthy that Appellant's counsel challenged Judge [1] for cause at the earliest possible time, some forty-five days before Appellant was returned to Wyoming pursuant to the IAD * * * and consistently urged the court to decide that Challenge For Cause. The Court, however, adopted the fiction that Appellant was not represented by his counsel, and attempted to appoint other counsel for Appellant * * *. The other counsel, Mr. Skaggs, was unwilling to participate in this program, and so advised the Court.

Although Appellant's counsel had asked to be appointed to represent Appellant * * *, after discussing the situation with Mr. Munker * * * so that Appellant's counsel could be paid something for continuing to represent Appellant, Judge [1] stated that he would not appoint the undersigned * * * no doubt as a result of the problems described in the Challenge for Cause To Judge [1]. Judge [2], in a decision letter on another subject * * * recognized Judge [1's] motivation as seeing that no fees were paid to counsel by the public defender's office.

Judge [1] took no formal action in the case from September 16, 1989, when Appellant arrived in Sheridan from the federal prison, until October 26, 1989, when

he set the Challenge For Cause for hearing * * *. Appellant advised the Court that the law requires such motions to be decided without hearing * * *, and the Court denied the Challenge For Cause, by Order dated November 2, 1989 * * *.

By Order dated November 2, 1989, Judge [1] set a new arraignment and a "scheduling conference" for November 3, 1989. At the arraignment, a Peremptory Challenge To Judge [1] was timely filed * * * and the "scheduling conference" of November 3, 1989, consisted of the Court announcing that trial would be held on December 11, 1989, and motion hearings would be held on November 17, 1989.

By Petition dated November 7, 1989, Appellant requested the Wyoming Supreme Court issue its Writ of Mandamus, Or Certiorari, Or Prohibition to enforce the Challenge For Cause and/or Peremptory Challenge which, in Appellant's view, had been improperly denied. * * * No action of record was taken in response to that Petition by the prosecution or Judge [1]. Instead on November 16, 1989, Judge [1] granted the Challenge For Cause, vacated the trial date, and assigned the case to Judge [2]. On November 20, 1989, the Supreme Court of Wyoming took the only action of record in the Petition For Mandamus case, namely; it dismissed the Petition as moot, having been advised that Judge [1] had granted the Challenge For Cause and recused himself.

Judge [2] entered the case and by Order dated December 11, 1989, imposed a briefing schedule on all parties, without consultation * * *. Many of the motions were resolved by stipulation between the parties. Judge [2] decided the unresolved motions by decision letter dated January 25, 1990 * * *. On February 16, 1990, the Defendant submitted his Motion To Dismiss For Failure Of The State To Bring The Defendant To Trial Within 120 Days As Required By The Interstate Agreement On Detainers, * * * and his brief in support of that Motion * * *.

Judge [2], on February 22, 1990, set another briefing schedule, without consultation, and directed that the prosecution compile a chronology "of all motions and other documents and actions by the defense which show all causes and reasons for any delay." * * * The prosecution submitted an undated and unsigned chronology, * * * which failed to mention delays attributable to itself and the Court, but merely claimed all delays were due to the Appellant.

By decision letter dated March 20, 1990, Judge [2] denied the Motion To Dismiss on IAD time limit grounds. Unfortunately, in denying the Motion To Dismiss the trial court did not distinguish cases cited by Appellant in support of that Motion, or demonstrate their inapplicability, but rather denied the Motion based on citations from an ALR annotation, and "any other valid reason set forth in the brief submitted by the State." * * *

While the IAD Motion To Dismiss was being considered, Judge [2] again asked for agreement on trial dates between counsel. * * * Appellant notified the prosecution and the Court that should the IAD Motion To Dismiss be denied, Appellant and his counsel were available at the Court's convenience, but would not agree to a trial date outside the IAD time limits, as the Court was now requesting * * *.

The prosecution made the decision that it could not try the case before the week of May 7th, 1990, * * *, and filed a Motion For Continuance in a different case, *State v. Poulos*, which was then pending in the District Court in Sheridan, on March 8, 1990, saying the State wanted Appellant's case tried the week of May 7, 1990 * * *. The trial judge set the case for trial on May 8, 1990. On May 8, 1990, Appellant's counsel again moved for dismissal on the grounds the trial had not commenced within 120 days of Appellant's arrival within the State as required by the IAD. * * * The Court again denied that motion.

## IV.

## CHALLENGE FOR CAUSE AS A CAUSATIVE FACTOR OF TRIAL DELAY

Whether or not a peremptory challenge is effective on retrial, the challenge for cause required recusal. *See* Wyoming's Code of Judicial Conduct, Canon 3(C)(1) (1973) and the current version of Wyoming's Code of Judicial Conduct, Canon 3(E) (1990). *See James v. City of East Orange*, 246 N.J.Super. 554, 588 A.2d 412 (1991).

A successor judge should have been appointed in August shortly after the challenge for cause. The new judge could have been prepared to have set a new trial in October or November. Even if we give the successor judge a hiatus from December 13, when the schedules were established, to February 7, 1990, when the orders were entered, a total elapsed time of 234 days when reduced by the hiatus still leaves 178 days as unjustified. Certainly, the trial court cannot take refuge in time taken to rule on a motion to dismiss for violation of the IAD as a justification for more time within the IAD. Concisely stated, trial was not scheduled, although it most conveniently could have been, within the statutorily required time following the prisoner's return to Wyoming.

> [U]nder Article IV, if the jurisdiction wishing to try the defendant requests extradition, there is no duty on the defendant to request to be tried. The defendant must be tried within 120 days unless good cause for continuance is demonstrated in open court. As the Supreme Court stated in *United States v. Mauro, supra*, 436 U.S. at 363–64, 98 S.Ct. at 1848–49 (footnotes omitted):
>
> > "We do not accept the Government's narrow reading of this provision; rather we view Art. IV(c) as requiring commencement of trial within 120 days whenever the receiving State initiates the disposition of charges underlying a detainer it has previously lodged against a state prisoner. Any other reading of this section would allow the Government to gain the advantages of lodging a detainer against a prisoner without assuming the responsibilities that the Agreement intended to arise from such an action."

*Haigler v. United States*, 531 A.2d 1236, 1241 (D.C.App.1987).

## V.

## MISPLACED RELIANCE OF THE MAJORITY

The majority relies on *United States v. Dawn*, 900 F.2d 1132 (7th Cir.), *cert. denied* —— U.S. ——, 111 S.Ct. 368, 112 L.Ed.2d 330 (1990); *United States v. Nesbitt*, 852 F.2d 1502, 1516 (7th Cir.1988), *cert. denied* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *United States v. Scheer*, 729 F.2d 164 (2d Cir.1984); *Bush v. Muncy*, 659 F.2d 402 (4th Cir.1981), *cert. denied* 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 449 (1982); and *United States v. Black*, 609 F.2d 1330 (9th Cir.1979), *cert. denied* 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980) to support the notion that delays occasioned by the defendant, such as pretrial motions, toll the 120–day trial requirement of W.S. 7–15–101, Article IV(c). Beyond the fact of conflicting intermediate court federal case law citation for dispositive construction of the Wyoming state statute, present reliance is misplaced for two additional reasons.

First, the *Nesbitt* rationale is faulty in the face of the IAD's purpose. The purpose is to prevent obstruction of prisoner's rights and to provide treatment and rehabilitation. W.S. 7–15–101, Article I. In addition, the IAD is intended to prevent abuse of detainers, undue incarceration and to limit the possibility that long delays will impair the ability of the prisoner to defend himself. *State v. Knauff*, 115 Idaho 74, 764 P.2d 441 (1988). "The idea that appellant's right to be tried speedily under the IAD turned on his agreement to forego filing pretrial motions is wholly without merit. It offends basic principles of criminal justice to suggest that a defendant must forego one constitutional or statutory right in order to exercise another." *Haigler*, 531 A.2d at 1242. *See Bunting v.*

*State,* 80 Md.App. 444, 564 A.2d 109, 113 (1989), pretrial motions were contemplated by the drafters of the IAD, and *State v. Shaw,* 98 N.M. 580, 585, 651 P.2d 115, 120 (1982), if motions will "delay," trial prosecutors must ask for continuance "for good cause shown." Against the backdrop of the purpose behind the IAD, I would hold that Judge 1 abused his discretion in waiting for three and a half months to make a single decision that required no legal research or reasoning.

Second, even when accepting, for the moment, the *Nesbitt* rationale that pretrial motions count to toll the 120–day trial requirement, that rationale has no bearing here. It appears disingenuous to use the *Nesbitt* line of cases as authority for tolling the statute because of appellant's pretrial motions which did not cause the pretrial delay. Krampner challenged Judge 1 for cause on August 2, 1989 and that judge stonewalled for three and a half months. The motions later filed on September 6, 1989 [3] were *frozen* until Judge 1 decided the recusal requirement. There were no "multiple motions" that accounted for the delay, there was only a *single* motion—the challenge for cause—that initiated actual trial delay which took action in this court to be resolved.

## VI.

DISCUSSION—STATUTORY EXCEPTIONS PROVIDING FOR POSSIBLE TIME EXTENSION: (1) GOOD CAUSE; OR (2) UNAVAILABILITY

This majority makes its initial mistake in analysis and application of the IAD. The federal compact within provisions for Article IV cases sets a mandatory time limitation of 120 days with two very diverse exceptions. The provisions of Article IV(c) involve voluntary acts of the defendant for other "good cause shown in open court." These events occur when the defendant is available. Except for appellant's delay request or good cause shown for other reasons, this case could have been tried if the trial court and prosecutor had chosen.

"[T]rial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, *but for good cause shown in open court, the prisoner or his counsel being present,* the court having jurisdiction of the matter may grant any necessary or reasonable continuance." W.S. 7–15–101, Article IV(c) (emphasis added). The second exception providing for an extension of time is found in Article VI(a) providing that *"the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial,* * * *."* (Emphasis added.)

It is apparent from the clear phraseology used that the two sections were intended to address completely different concepts. There are a line of federal court cases, most of which were cited in the majority, that incorrectly lump the exception of Article IV into a characterization of Article VI. *See Nesbitt,* 852 F.2d 1502. As the phraseology relates, and as the more thoughtful analysis understands, unavailability is just that—physical absence of the body by location in foreign jurisdiction, escape or institutionalization because of a mental disability. A quick example of the correct application is provided in *Green v. State,* 784 P.2d 1360 (Wyo.1989), which was properly decided as an unavailability case when the defendant was absent from the jurisdiction of a pending trial by removal to another jurisdiction to be tried for a different criminal offense.

Any suggestion here of unavailability is mistaken and misapplied. In this case, the only issue is whether the Article IV exception, good cause—open hearing—defendant or counsel present test, added sufficient time to the statutory limitation so that the total was not exceeded as a mandatory requirement enforced by the federal compact. Motion delay issues have no proper office in assessing unavailability concepts of Article VI. Motion issues are solely good cause questions under Article IV.

A thoughtful and comprehensive consideration of this issue was provided in the case of *United States v. Roy,* 830 F.2d 628,

---

**3.** Half of which were stipulated away, leaving only six for disposition.

634 (7th Cir.1987), *cert. denied* 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988), where the government argued that Article VI applied and the defendant contended that the question came under Article III(a). The court ruled conversely to the prisoner that it was not an Article III (or Article IV) case, but instead an Article VI case determinable by physical absence.

In construing a statute or similar legislative work product, we must construe it to effectuate the overall legislative intent. Moreover, we must construe a legislative enactment in such a manner as to give effect to all of its provisions. In accomplishing this task, we presume that the legislature intended that each section was a necessary component of the statutory scheme and not surplusage. * * *

When we read the IAD according to this methodology, we cannot accept Mr. Roy's interpretation of the IAD for several reasons. First, if tolling under article VI required that the procedures set forth in article III be followed, there would be no reason to have two separate provisions. Article III already provides (as does article IV) for the granting of continuances. Unless article VI performs a distinct function, it is mere surplusage. Second, that distinct function is quite apparent from the structure of the IAD. The continuance provisions of article III and article IV are designed to permit the courts of the receiving state to postpone trial when the interests of justice make such a continuance "necessary or reasonable." The "good cause" must be shown in open court in order to ensure that the delay does not work to the detriment of the substantial rights of the prisoner. On the other hand, the continuance clause of article VI is designed to perform another function. It exempts from the governance of the IAD time when the prisoner is "unable to stand trial." It is easy to conceive of a situation where "good cause" could be shown for a necessary or reasonable continuance at the request of the government as well as the defendant even though the petitioner would be able to stand trial at that time. It is in such an instance that the requirement that the continuance be granted in open court would serve the purpose of preventing abuse of this situation by the government.

We do not read the Sixth Circuit's decision in *Stroble,* 587 F.2d 830, as necessarily requiring a different result, *Stroble* could be read to support Mr. Roy's argument that in order for the running of the 180–day time limit prescribed by article III to be tolled under article VI that a continuance, as provided in article III(a), must be granted. However, *Stroble* can also be read to treat the tolling under article VI as a separate question from a continuance under article III or IV. *See id.* at 838–39. Although the court discussed these two arguments consecutively, nowhere does the court state that the requirements of article IV must be met in order to provide for tolling under article VI.

*Id.* at 634–35. Cited in support of this approach and differentiation in *Roy* was the case of *Young v. Mabry,* 596 F.2d 339 (8th Cir.), *cert. denied* 444 U.S. 853, 100 S.Ct. 107, 62 L.Ed.2d 69 (1979).

*Stroble v. Anderson,* 587 F.2d 830, 838 (6th Cir.1978), *cert. denied* 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979) actually recognized the Article VI extension provision involving physical unavailability:

This record does not disclose any determination by the state courts that appellant was "unable" to stand trial. He was in Michigan within the jurisdiction of the trial court and there is no showing in this record that he was physically or mentally disabled. Appellant never sought a postponement of his murder trial because of the fact that it was at one time scheduled to begin two weeks after completion of the assault with intent to murder trial. Neither did the prosecutor. In fact, there is no indication that any judge ever considered any rationale now urged as justification for the violation of the I.A.D.

We believe that Art. VI was written as a protective measure for a transferred prisoner. It cannot appropriately be

turned from a shield for the defendant into a sword for the prosecution.

If we were to consider that the District Judge was engaged in a finding of fact in holding appellant "unable to stand trial," we would conclude that the finding was unsupported by this record and was clearly erroneous.

Similar to *Roy* is *Com. v. Klimek,* 416 Pa. 434, 206 A.2d 381 (1965), where a severance was neither a request for a continuance nor good cause. The apparent accidental misconstruction which took good cause questions into an unavailability discussion commenced with another *Roy* case, *United States v. Roy,* 771 F.2d 54 (2d Cir.1985), *cert. denied* 475 U.S. 1110, 106 S.Ct. 1520, 89 L.Ed.2d 918 (1986); also see *United States v. Taylor,* 861 F.2d 316 (1st Cir. 1988) and *Nesbitt,* 852 F.2d at 1516. In *Taylor,* the court intermixed waiver, unavailability and Article IV, good cause without apparent understanding of the differences, and applied by interpretation contrary to the clear and plain language of the statute which had been enacted not only by this state, forty-seven other states, but also by the United States Congress. In *Nesbitt,* the court discussed Article VI, but the case itself properly emplaced decision on Articles III and IV, good cause, with tolling derived from acts of the defendant. *See likewise Dawn,* 900 F.2d at 1136. *Cf. State v. Finley,* 277 S.C. 548, 290 S.E.2d 808 (1982), where an implied continuance was adopted to justify failure to comply with the statute or to actually address the good cause issue of decision made after the time had expired. Excluding those citations noted, a broad array of cases recognize the different perspective derived from the good cause concepts of Articles III or IV or the unavailability concept of Article VI. See, for example, *People v. Meyers,* 109 Mich.App. 719, 311 N.W.2d 454, 456 (1981), remanded for an evidentiary hearing, *People v. Meyers,* 412 Mich. 916, 387 N.W.2d 926 (1982), and considered again on appeal on remand, *People v. Meyers,* 124 Mich.App. 148, 335 N.W.2d 189 (1983).

A. *Is Appellant's Normal Trial Motion a Freebie for Prosecutorial Time Extension?*

With a proper framework established for analysis of the many cases, a constructive continuum of accommodative rules and concepts can be found which define whether normal defense motions used for an adequate defense automatically bequeath prosecution and the trial court additional time. I cannot follow the misstated concepts and supporting case law cited by the majority. If we do, we disregard or misconstrue the statute, although enacted for the benefit of the prisoner, by a construction which ameliorates the beneficial function and denies statutory effectiveness.

Fundamentally, we start with the statutory rules of construction and application to be applied to a *clearly written statute* which is an enactment of a partnership compact under the United States Constitution. *See Allied–Signal, Inc. v. Bd. of Equalization,* 813 P.2d 214 (Wyo.1991) (No. 90–97, decided 6/12/91). For introductory application, the Illinois court applied a normal standard of statutory construction to the Article IV(e) question of timeliness in stating:

> Article IV states unequivocally that if trial is not had before the prisoner is returned, the indictment must be dismissed with prejudice. It is the practice of this court to give statutory language its customary meaning, unless so doing would be inconsistent with the purpose of the statute. * * * Further, criminal statutes are to be strictly construed in favor of the accused. * * * In addition, the agreement is a remedial statute, which must be liberally construed in favor of those whose problems it was meant to address. * * *

> *   *   *   *   *   *

> This court avoids technical constructions which frustrate the purpose of our State's speedy-trial provisions. Where the delay is attributable to the defendant, the statute is tolled * * *. In contrast, where the defendant has not caused the delay, the State is not permit-

ted to engage in technical maneuvers to toll the statute. *People v. Christensen*, 102 Ill.2d 321, 80 Ill.Dec. 302, 465 N.E.2d 93, 96–97 (1984).

If we add a historical review interpretive function, there is nothing in the IAD history to suggest a disregard of its *plain meaning*. *Allied–Signal, Inc. v. Bd. of Equalization*, 813 P.2d 214 (Wyo.1991). The direct conclusion has been utilized for analysis of the statutory terms by the United States Supreme Court decisions and variant state courts. *Carchman*, 473 U.S. at 724, 105 S.Ct. at 3405; *People v. Allen*, 744 P.2d 73, 75 n. 4 (Colo.1987); *Bunting*, 564 A.2d at 113.

In specific detail, this appeal presents an Article IV(c) proceeding for which the period of time from arrival of the prisoner in the receiving state to date of commencement of trial is a stated *120 days* and, in failure thereof, *the criminal charge must be dismissed.* This provision should be within any construction of plain language with a plain meaning. W.S. 7–15–101, Article V(c) states:

> If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the periods provided by this act, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

*See United States v. Ford*, 550 F.2d 732 (2d Cir.), *cert. granted* 434 U.S. 816, 98 S.Ct. 53, 54 L.Ed.2d 72 (1977), *aff'd sub nom. United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *Moore v. Whyte*, 164 W.Va. 718, 266 S.E.2d 137 (1980) and Annotation, *Validity, Construction, and Application of Interstate Agreement on Detainers*, 98 A.L.R.3d 160 (1980).

This time limitation, according to analysis of some cases which consider the peremptory terms of the IAD, declares that the constitutional compact set a jurisdiction standard; when the time runs out, court jurisdiction is ended. *People v. Crawford*, 147 Mich.App. 244, 383 N.W.2d 172 (1985); *Moore*, 266 S.E.2d 137. *Cf. United States v. Eaddy*, 595 F.2d 341 (6th Cir.1979).

We deal in the 120–day time limitation of Article IV(c) or, first, "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance[;]" *see Haigler*, 531 A.2d at 1245 and *Bell v. State ex rel. Lane*, 714 P.2d 205 (Okl.Cr. 1986); and, second, Article VI(a) "[i]n determining the * * * expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." *There are no other statutory exceptions to the time for trial requirements mandated or permitted by the compact.* *Ford*, 550 F.2d 732.

**B.** *Calendaring Difficulties Are Not Automatically Good Cause.*

If extension for delay is contended to be calendaring difficulties, the good cause requirement requires proof that the trial court took reasonable steps to convene the trial within the applicable statutory time. *Haigler*, 531 A.2d at 1244. Cited in support of this principle is the case of *Felix v. United States*, 508 A.2d 101 (D.C.App. 1986), and the various cases therein cited, *id.* at 108, which include: *Brown v. Wolff*, 706 F.2d 902, 906 n. 8 (9th Cir.1983); *Ford*, 550 F.2d at 743; *People v. Bell*, 669 P.2d 1381, 1386 n. 3 (Colo.1983); *People v. Forrest*, 72 Mich.App. 266, 273, 249 N.W.2d 384, 388 (1976); *State ex rel. Hammett v. McKenzie*, 596 S.W.2d 53, 58–59 (Mo.App. 1980); *State v. Aaron*, 102 N.M. 187, 191, 692 P.2d 1336, 1340 (1984); and *People v. Miller*, 34 N.Y.2d 336, 337–38, 357 N.Y. S.2d 457, 458, 313 N.E.2d 761, 762 (1974). *See also, Johnson v. Stagner*, 781 F.2d 758 (9th Cir.1986) and *Ravenscraft v. State*, 753 S.W.2d 741 (Tex.App.1988). This rule

is stated in *Knauff,* 115 Idaho at 76, 764 P.2d at 443:

> Good cause means a substantial reason; one that affords a legal excuse. * * * We have held that "good cause" requires more than merely showing a crowded court docket as the reason for delaying a trial beyond statutory deadlines. The state must also show that reasonable alternative solutions were not available to avoid the delay.

Recognition of scheduling concerns when applied to the statutory criteria of good cause shown as a procedural examination is addressed in *Felix,* 508 A.2d at 109:

> In construing the Act's "good cause provision," courts have insisted that any continuance be granted "in open court" in the presence of either the defendant or his counsel as required by the Act. * * * Certain courts have also interpreted the Act's language as contemplating that the granting of continuances for "good cause" only be made upon an express prosecutorial or defense motion for such a continuance, and may not be initiated by the trial judge. * * *

Accordingly, we take this opportunity to advise that while a crowded trial court calendar may in some circumstances constitute good cause for granting reasonable and necessary continuances under the IAD, it does not amount to *per se* good cause. Otherwise, in these times of chronic court congestion, the "good cause" exception could eviscerate the Act's speedy trial provisions. We recognize that because of serious scheduling conflicts it may not always be possible to accommodate the time limits imposed by the Act. Nevertheless, efforts must be made to adjust the court's calendar so as to commence trial proceedings in a timely fashion before continuances are granted due to court congestion. Similarly, because of the nature of the time limits imposed by the Act, and the severe consequences when those time constraints are not met, it is advisable in cases where the IAD speedy trial provisions are in effect for the trial court not to schedule a trial for the very last date available.

### C. *Burden of Proof is on the State to Prove Facts Justifying a Time Extension.*

The burden of proof is on the state through the prosecution and the trial court, *Allen,* 744 P.2d 73, to demonstrate good cause shown in open court with prisoner or his counsel present in order to be justified in any extension of time. *Ford,* 550 F.2d 732; *Aaron,* 102 N.M. 187, 692 P.2d 1336; *Miller,* 357 N.Y.S.2d 457, 313 N.E.2d 761. Good cause contemplates a prosecutorial motion and statutory hearing for compliance. Good cause is demonstrated good cause by factual presentation. *Loane v. State,* 12 Ark.App. 374, 677 S.W.2d 864 (1984); *People v. Sevigny,* 679 P.2d 1070 (Colo.1984); *McKenzie,* 596 S.W.2d 53. *See also Forrest,* 249 N.W.2d 384, comparable state speedy trial statute; *State v. Mason,* 90 N.J.Super. 464, 218 A.2d 158 (1966); *Com. v. Gregg,* 470 Pa. 323, 368 A.2d 651 (1977); and *Moore,* 266 S.E.2d 137.

### VII.

### WHAT THIS CASE IS NOT

With the foregoing principles generally recognized, I am called to consider what this case does not present. It is not the situation sometimes presented where, within the statutory time, the trial court sets a trial date beyond the time and the failure of the defendant to object at that time can constitute waiver. *Pethtel v. State,* 427 N.E.2d 891 (Ind.App.1981). *Cf. Allen,* 744 P.2d 73 and *Sevigny,* 679 P.2d 1070.

This case is also not the delay occasioned by the events discussed in *Snyder v. State,* 103 Nev. 275, 738 P.2d 1303 (1987), where there was time for a failed plea negotiation effort of ninety days, continuance of fourteen days because defense counsel was in another trial, an eighty-four day lapse for resolution of a petition for writ of habeas corpus, an additional forty-nine days because defense counsel was ill and forty-two days then added to locate defendant's witnesses. See, likewise, where defense counsel asked for and was given a trial date beyond the limitation time, *People v.*

*Sampson,* 191 Cal.App.3d 1409, 237 Cal. Rptr. 100 (1987), where a personal appearance in court and specific action of the court in granting defendant's requested date for trial was the test for extension of trial time. *See likewise Drescher v. Superior Court (People),* 218 Cal.App.3d 1140, 267 Cal.Rptr. 661 (1990) and *Baylor v. United States,* 500 A.2d 1012 (D.C.App. 1985). *See further State v. Vaughn,* 296 N.C. 167, 250 S.E.2d 210 (1978), *cert. denied* 441 U.S. 935, 99 S.Ct. 2060, 60 L.Ed.2d 665 (1979), which involved a continuance obtained by defendant to secure attendance of out-of-state witnesses.

Conversely, good cause was not filing a motion to disqualify defendant's attorney the day before the scheduled trial and then failing to get a rescheduled trial before the time ran out, *Crawford,* 383 N.W.2d 172, or failing to take any action to request a "good cause" extension, *Pittman v. State,* 301 A.2d 509 (Del.Supr.1973). Waiver by failure to raise the issue until post trial also cannot be applied to disadvantage appellant in this case since his counsel promptly and properly raised the issue when the time had expired. *Eaddy,* 595 F.2d 341.

## VIII.

## IAD COMPACT REQUIREMENTS ARE MANDATORY

The time limitations and other controlling provisions of the IAD are mandatory. *Hughes v. District Court In and For City and County of Denver,* 197 Colo. 396, 593 P.2d 702 (1979). Since the IAD is remedial, it should be liberally construed in favor of the defendant. *State v. Wood,* 241 N.W.2d 8, 12 (Iowa 1976). *See however State v. Bass,* 320 N.W.2d 824 (Iowa 1982) and *Mason,* 218 A.2d 158. Waiver to constitute a character of good cause within the criminal case should be based on some affirmative action of the accused. *Drescher v. Superior Court,* 217 Cal.App.3d 1140, 266 Cal. Rptr. 478 at 481–82 states:

Respondent contends petitioner waived his right to trial within 120 days of his return to this jurisdiction by waiving his right to a speedy preliminary hearing and requesting continuances of the hearing. Section 1389 contains no statutory provision for waiver. However, the Agreement is an interstate compact approved by Congress, and therefore a federal law subject to federal rather than state construction. * * *

"Federal cases interpreting the IAD have concluded that waiver is indeed possible. 'A prisoner may waive his IAD rights ... if he affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD.' (*Brown v. Wolff* (9th Cir.1983) 706 F.2d 902, 907: see also *United States v. Black* (9th Cir.1979) 609 F.2d 1330, 1334.)" (*People v. Sampson, supra,* 191 Cal. App.3d 1409, 1416, 237 Cal.Rptr. 100.)

In *Brown,* 706 F.2d at 907 (footnote omitted), the court stated:

A waiver is not ordinarily found from mere silence. The Agreement puts no affirmative obligation on the prisoner to alert the court of his IAD rights. We think it inappropriate to impose such an obligation.

A prisoner may waive his IAD rights, however, if he affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD. * * * In this case, by explicitly agreeing to a continuance of trial before the 180–day period had run and then agreeing to a further continuance up to the date of his trial on November 13, Brown acted contrary to the speedy trial provisions of the IAD. When Brown filed his habeas petition on June 7, 1978, he stipulated that the trial could be continued if the petition were not decided by July 10. The habeas petition was not decided until August 7, 1978. At that point Brown agreed to a further continuance of trial until November 13, 1978, while he appealed the denial of his petition to the State Supreme Court. Brown was tried on November 13. When we exclude from the computation the period covered by the continuances (July 10 through November 13), we find Brown was tried within 180 days of his request. Under these circumstances we find no IAD violation.

The waiver must be voluntary. *Eaddy,* 595 F.2d 341. *See also Mauro,* 436 U.S. 340, 98 S.Ct. 1834, and *People v. Esposito,* 37 Misc.2d 386, 201 N.Y.S.2d 83 (1960). *Contra Scrivener v. State,* 441 N.E.2d 954 (Ind.1982), where an actual objection was required to retain benefit of the statute when a rescheduled trial date was considered in the Article III case.

The foregoing principles likewise seem to be universally followed because of the superintending authority of the United States Supreme Court which exists and more particularly the clarity of the statutory language which was hardly intended by its very expert legislative drafters to be indefinite or uncertain. *Carchman,* 473 U.S. at 728, 105 S.Ct. at 3407; *Cuyler,* 449 U.S. 433, 101 S.Ct. 703; *Mauro,* 436 U.S. 340, 98 S.Ct. 1834. *See also State v. White,* 234 Kan. 340, 673 P.2d 1106 (1983) and *State v. Arwood,* 46 Or.App. 653, 612 P.2d 763 (1980). Directly stated, since the provisions of the statute are clear and straightforward, "[t]he time limit within which trial must be held is mandatory." *Arwood,* 612 P.2d at 765. No court really denies this principle; the issue becomes disregarded by practical application where, after the fact, validity of a conviction is challenged.

## IX.

## WHAT IS THE DISPUTE—AUTOMATIC MOTION RELATED EXTENSION

Then occurs the area of dispute with the predominate state court view:

a. The "unable to stand trial" provision of Article VI(a) does not include normal trial progress during which the defendant is continually available. Involved in the application of the Article IV provision are two possible differentiated exceptions, one being a request of the defendant which can provide automatic cause and another is events in which the defendant is not a causative participant and which requires compliance with the statutory process involving good cause, determined basis and decision in open court. *Roy,* 830 F.2d at 634; *Stroble,* 587 F.2d 830; *Felix,* 508 A.2d 101.

b. The real dispute involves the question of whether normal preparatory motions filed by an accused automatically extend the statutory time within which the trial is required to be commenced, no matter how dilatory the trial judge may be in ruling. Clearly, there is a line of authority in some federal circuits which is a hold-over from the terminology included in statutes relating to speedy trials in federal prosecution, 18 U.S.C.S. § 3161 (1979 & 1990 Cum. Supp.), which provides, in concept, automatic extension as a characterization of good cause. *Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986). The singular difference is the 18 U.S.C.S. § 3161(h)(1)(F) explicit exclusion created by Congress becomes implanted into the IAD as written by *judicial legislation* to add an exception without authentication of any *congressional action* or *state enactment.*[4] There is, conversely, a broader based group of cases declining to abjectly legislate which hold that motion practice is in the nature of any criminal prosecution and defense and good cause for an extension of time within the rather extended time provided requires demonstration that *disposition of the motion* could not be achieved without requiring additional court opportunity for decision or providing the parties additional time for briefing. *Haigler,* 531 A.2d at 1242.

The idea that appellant's right to be tried speedily under the IAD turned on his agreement to forego filing pretrial motions is wholly without merit. It offends basic principles of criminal justice to suggest that a defendant must forego

---

**4.** An abject and totally unjustified intervention for legislative interpretation and application is now provided which moves as far from a plain meaning reasonable application standard as is possible to conceive. *See Allied–Signal, Inc.,* 813 P.2d 214 (Urbigkit, C.J., specially concurring). The federal speedy trial seventy-day provision had a stated legislatively provided time exception. The IAD does not. Federal courts utilize the enacted provisions of speedy trial to create a similar unauthenticated proviso for IAD interpretation. What was congressionally determined for a seventy-day limitation is judicially recreated to apply to the IAD a 180–day limitation. This is judicial activism with resulting separation of powers violation.

one constitutional or statutory right in order to exercise another. Appellant could not be understood to waive his rights under the IAD simply because he exercised his right to make pretrial motions. Moreover, the Act has been construed to avoid this dilemma. "[I]n computing whether or not the requirements of Article IV(c) have been satisfied, it is appropriate to exclude all those periods of delay occasioned by the defendant," *United States v. Scheer*, 729 F.2d 164, 168 (2d Cir.1984). The time consumed in consideration of appellant's motions (May 17, 1984–June 13, 1984) is simply not counted in the 120–day period allotted the government to bring appellant to trial under Article IV. Appellant's exercise of his right to make pretrial motions does not bar him from asserting a claim under the IAD.

*Id.* at 1242 (footnote omitted).[5]

In clear resolution, the court in *Shaw*, 98 N.M. at 585, 651 P.2d at 120 (emphasis added) decisively followed the clear language and purpose defined principle:

We prefer, therefore, to adopt the view that the time limitations of the Agreement were intended to permit sufficient time and opportunity for disposition of all pre-trial proceedings and commencement of trial before the time expired. The Agreement specifies that time is tolled only when the prisoner is "unable to stand trial" as determined by the court (Art. 6 A); in all other circumstances, it provides the mechanism for reasonably or necessarily extending the time limits by a request for continuance "for good cause shown." When the trial court has not been asked to exercise the authority granted to it by the Agreement for extending the time to bring the matter to trial, we find nothing in the Agree-

ment or in logic which would give us the authority to do so.

The district attorney may not have wilfully caused any delay in trying defendant, but as the *Klimek* court noted, at 206 A.2d 382, that is not a controlling issue nor is it a valid excuse for not complying with the statute.

*We find no merit in any philosophy that pays lip service to the principles of due process, speedy trial, and binding interstate compacts * * *, and then ignores those principles because their benefits were called upon by the very person whose interests were intended to be protected by them.*

In application of a similar statute, the Pennsylvania court in *Com. v. Kripplebauer*, 322 Pa.Super. 317, 469 A.2d 639, 640–41 (1983), *dismissed as improvidently granted*, 507 Pa. 164, 489 A.2d 195 (1985) (footnotes omitted) said:

The Commonwealth maintains that the lower court erroneously dismissed the charge because appellee had been "unable to stand trial" during the thirty day period he requested to file pre-trial motions and on the requested trial date one day later, thus the rundate was extended at least to April 9, 1982, making the Commonwealth's petition to extend timely. We find this contention meritless. Our Supreme Court has held the 120–day period tolled by a defendant's consenting to waive his speedy trial rights and by his own requests for continuance. * * *

Here, however, appellee neither voluntarily waived his speedy trial rights by his own actions, nor consented to their waiver. Rather, appellee exercised his right, * * *, in requesting thirty days after his preliminary hearing to file pretrial motions. At no time did appellee request a "continuance" that would have

**5.** It should also be observed that we have an upside-down situation here when compared to *Haigler* and its predecessor case of *Mauro*, 436 U.S. at 365, 98 S.Ct. at 1849. In *Mauro*, and then discussed in *Haigler*, 531 A.2d at 1239 n. 4, the court considered waiver of the claim if the right *was not asserted*. In this case, the computation of this majority increases the actual excused time when the right was asserted by adding an additional factor of motion time to de-

cide applicability of the IAD time limitation. The statutorily limited time is extended by the motion to dismiss based on the chronologically expired statutory time. That application turns the statute upside down and would be the same as saying that the best defense for denial of a constitutional right to a speedy trial is the effect of filing a motion to dismiss for failure to provide a speedy trial. Assertion of the right extends the time to comply.

necessitated setting back the proposed trial date. Defendant's motions to remand for and request a new preliminary hearing have not been treated by our Court as requests for continuances. *Commonwealth v. Goodman,* 260 Pa.Superior Ct. 266, 393 A.2d 1256 (1978); *Commonwealth v. Delauter,* 257 Pa.Superior Ct. 510, 390 A.2d 1354 (1978). In *Goodman,* the Court reiterated its express disapproval in *Delauter* of courts' considering a "remand for a preliminary hearing as a request for continuance," *Goodman, supra,* 260 Pa.Superior Ct. at 277, 393 A.2d at 1261, * * *. Because a request for a preliminary hearing is part of the pre-trial proceedings to which a defendant is entitled, and is not considered a "continuance," we conclude that a request for thirty days to file pre-trial motions is equally part of pre-trial proceedings, and must be similarly treated.[6]

## X.

### EVEN BY ADOPTING A MOTION PRACTICE EXTENSION RULE, THIS DECISION CANNOT BE JUSTIFIED

Despite the review I have pursued regarding motion practice and the IAD, it must be noted here that the issue of motion time is not dispositive. The majority has to add something to the scarecrow concept of the actual period from arrangement to hear motions to disposition to create the hobgoblin of excused time sufficiently extended to come within the statutory limitation. We are called to add the stonewalling period of the trial court recusal and the decision time taken by the trial court to decide a question of IAD dismissal for failure of statutory compliance. These additions lack justice, justification or plain meaning authentication within the statute.

This decision, with any effort to apply the statutory plain intent as clearly written for the purpose originally drafted and adopted by the state government participants to then be approved by Congress, overtly fails both reasoned language and justice. It should be recognized that the argument presented here and what this court has done with it could have more easily found cause in the denial of the application of the compact adopted statute upon the more preclusive cause that appellant got himself in a position to be charged with a criminal offense. Consequently, then, cause for delayed trial is having been just charged with some crime. The one adopted general exception really makes no more sense than does this other implied exception. Additional cause is provided here because appellant secured competent counsel. If incompetent counsel had been involved, then perhaps because of the effort of the trial judge to deny choice of counsel, no IAD issue would have developed. Without recusal demand or normally competent trial preparation, no motions, no proper legal service protection, no realistic effort to defend, automatic dismissal for delayed trial under the 120–day limitation might have acceptably occurred. Is this our creative effort to restructure the solemnly adopted interstate compact provision of the IAD in order that protection is only afforded if there is incompetent counsel or no realistic effort to defend?

In analysis of the case and application in accord with the frequently stated rule of construction of the Wyoming statutes, *Al-*

---

**6.** It is also said that timely filings by the prosecution of a motion for extension of time for good cause means filing within the time provided by statute. *Com. v. Delauter,* 257 Pa.Super. 510, 390 A.2d 1354 (1978); *Com. v. Shelton,* 469 Pa. 8, 364 A.2d 694 (1976). Consent is not silence, but must be an express consent that the case be continued. *Arwood,* 612 P.2d 763; *State v. Chadwick,* 150 Or. 645, 47 P.2d 232 (1935). In *Arwood,* 612 P.2d at 765, the court in recognizing the earlier precedent said:

Consent * * * is not silence, but must be an express consent that the case be continued.

We hold that the same requirement applies here. Defendant had asserted his statutory demand for trial within 180 days by his notice of the place of his imprisonment and request for a final disposition. Something more than his mere silence at arraignment must serve to belie his earlier intention. * * * Furthermore, inattentiveness to the passage of time on the part of the trial court and prosecutor do not constitute good cause for the continuance granted by the trial court.

*lied–Signal, Inc.,* 813 P.2d 214, what is clear should be clearly enforced. This court should find extension time cause for delay to be only attributable to defendant and sufficient to justify extension of time by the court when defendant's activities at trial presentation are unusual or unnatural or preclude normal scheduling. *Shaw,* 98 N.M. 580, 651 P.2d 115; *Kripplebauer,* 489 A.2d 195.

In pursuit of the extended case law to develop some rational precedent, there inevitably surfaces a philosophic concern about an issue here which is of equal application to the constitutional right of speedy trials in state and federal constitutions, *Phillips v. State,* 774 P.2d 118 (Wyo.1989); *Harvey v. State,* 774 P.2d 87 (Wyo.1989)— whether fundamental rules apply to the citizens in limitation, but when presented to the courts, do not create an enforceable benefit. I dissent from that portion of the majority that eviscerates a solemn interstate statutory compact, a Wyoming law, and a federally enacted requirement for expeditious trial. This decision invites a direct due process and equal protection violation. All of this is justified in denial of the statutory rights by excused judicial system non-performance when the accused is adequately defended.

I also respectfully dissent from any decision that disregards the clear intent, purpose and philosophic overlay of the IAD provided by its history through enactment by forty-eight states, including Wyoming, and the United States Congress.[7]

---

7. Although the dissent of Justice Scalia about the twenty-four hour/forty-eight hour controversy in *County of Riverside v. McLaughlin,* —— U.S. ——, 111 S.Ct. 1661, 1677, 114 L.Ed.2d 49 (1991) contains some exceptionally expressive statements, I find the last sentence to be especially pertinent and well-phrased for application here:

> In my view, this is the image of a system of justice that has lost its ancient sense of priority, a system that few Americans would recognize as our own.